# EXHIBIT B

2020 WL 425965
Only the Westlaw citation is currently available.
United States District Court, N.D. Ohio, Eastern Division.

IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION
This Document Relates to: Track One-B Cases

MDL 2804
|
Case No. 1:17-md-2804
|
Signed 01/27/2020

**OPINION AND ORDER DENYING WALMART'S MOTION FOR SUMMARY JUDGMENT**

DAN AARON POLSTER, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Walmart Inc.'s Motion for Summary Judgment (Doc. #: 1864). For the reasons set forth below, the Motion is **DENIED**.

Against Walmart, Plaintiffs assert common law claims for absolute public nuisance and civil conspiracy based on an alleged failure to maintain effective controls against diversion.[1] Walmart seeks summary judgment, asserting Plaintiffs cannot show any prescription opioids that Walmart shipped to its own pharmacies were diverted from appropriate medical use or caused the harm that Plaintiffs claim. Walmart also contends Plaintiffs cannot establish the elements of an absolute public nuisance claim.

**I. Legal Standards.**
The Court incorporates the legal standards set forth in the Court's Opinion and Order regarding Plaintiffs' Summary Judgment Motions addressing the Controlled Substances Act. *See* Doc. #: 2483.

**II. Analysis.**

**A. Failure to Maintain Effective Controls.**
Walmart asserts Plaintiffs cannot show it failed to maintain effective controls against diversion. *See* Mem. at 8-9 (Doc. #: 1864-3); Reply at 2 (Doc. #: 2512). Plaintiffs respond with evidence suggesting, *inter alia*, the following facts. From the early 2000s to April 2018, Walmart self-distributed controlled substances to its own pharmacies. Before 2011, Walmart had no written policies or procedures concerning the monitoring of suspicious orders.[2] During this time frame, it relied on employees to look at daily orders and, "based on their knowledge," let someone know if "they saw something that maybe looked like it was kind of high."[3] The identity of these employees changed over time, as people left and were hired.[4] In determining whether they saw unusual patterns or orders, the employees relied on their own knowledge and experience; Walmart did not provide written information to guide them.[5]

From 2011 to 2015, Walmart implemented a threshold system that flagged: (1) orders exceeding 5,000 dosage units, *i.e.* 50 bottles each containing 100 dosages; and (2) orders that were 30% higher than a rolling four-week average for a particular item.[6] It is unclear what, if any, due diligence was performed on flagged orders; it appears that Walmart simply shipped the flagged orders and did not report them to the DEA. Beginning in mid-2012, Walmart implemented "hard limits" of 20 bottles for shipments of Oxycodone 30 mg and 50 bottles of other opioid medications.[7] Jeff Abernathy, a Walmart employee who was responsible for reporting to the DEA if there was a suspicious order identified on his shift,[8] testified that, for orders exceeding the threshold limits, he was directed to reduce the order to the threshold limit and ship it anyway.[9] As to any orders that were cut, Walmart's pharmacies remained free to order the same opioid products from other distributors such as McKesson and AmersourceBergen.[10] In 2015, Walmart implemented store-specific and item-specific thresholds;[11] however, it continued to "include minimum amounts below which no orders were flagged under any circumstance regardless of pattern or frequency." Opp. at 7 (Doc. #: 2218) (emphasis

omitted).

**\*2** The Court finds that, construed in a light most favorable to Plaintiffs, the existing record presents a triable issue of fact regarding the adequacy of Walmart's suspicious order monitoring efforts.[12] Accordingly, Walmart is not entitled to summary judgment on this ground.

### B. Causation.

Walmart argues Plaintiffs cannot show its opioid distributions substantially caused their alleged injuries. Specifically, Walmart asserts it was responsible for only a small market share of less than 1.3% of the total opioids distributed in the *Track One* Counties, and Plaintiffs have not identified a single inappropriate prescription that it distributed. *See* Mem. at 1-2, 9-11 (Doc. #: 1864-3); Reply at 4-5 (Doc. #: 2512).

The Court has previously denied the Distributor Defendants' Motion for Summary Judgment on Proximate Causation Grounds (Doc. #: 1920), concluding that, based on the "massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests a complete failure by the Distributors and Pharmacies to maintain effective controls against diversion, a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs." SJ Order re: Causation at 9 (Doc. #: 2561). Additionally, the Court has denied summary judgment motions brought by other arguably *de minimis* distributors of opioids, including one that purported to have shipped "only 0.03% of opioids sold in Summit County between 2006 and 2014." SJ Order re: Small Distributors (Doc. #: 2559). In so ruling, the Court noted "even a very small proportional contribution by one of numerous defendants could equate with a rather large and substantial absolute quantity, both in monetary terms and in terms of the consequent harms." *Id.* at 5. Based on these earlier rulings and Plaintiffs' evidence of insubstantial anti-diversion efforts, the Court finds Plaintiffs have produced evidence upon which a jury could reasonably conclude Walmart's distribution activities caused Plaintiffs' alleged injuries.

### C. Absolute Public Nuisance

Walmart contends Plaintiffs cannot show the elements of an absolute public nuisance claim, *i.e.* that Walmart interfered with a public right through activity that was (1) inherently dangerous, (2) intentional misconduct, or (3) unlawful. *See* Mem. at 12-13 (Doc. #: 1864-3) (citing *Barnett v. Carr*, 2001 WL 1078980 at \*10-11 (Ohio Ct. App. Sept. 17, 2001)). The Court has previously denied the Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Doc. #: 1893), concluding that Plaintiffs' evidence demonstrating Defendants' failure to comply with obligations under the Controlled Substances Act "is sufficient to raise material issues of disputed facts regarding each element of their nuisance claims." SJ Order re: Public Nuisance at 6-7 (Doc. #: 2578). Based on this earlier ruling and Plaintiffs' evidence of Walmart's allegedly deficient anti-diversion efforts, the Court finds Plaintiffs have produced evidence sufficient to support their absolute public nuisance claim.[13] Accordingly, Walmart is not entitled to summary judgment.

### III. Conclusion.

**\*3** For the reasons stated above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2020 WL 425965

---

Footnotes

1   Against the Pharmacy Defendants, the Court has severed all claims except absolute public nuisance and civil conspiracy. *See* Track One-B Case Mgmt. Order at 2, 4 n.5 (Doc. #: 2940); Pls. Revised Position Stmt. re: Continuing Litigation at 3 (Doc. #: 2935). The Court therefore does not address Walmart's motion as to any severed claims. The Court has granted Plaintiffs leave to add dispensing claims and related dispensing entities, *see* Track One-B Case Mgmt. Order at 4 (Doc. #: 2940); those claims are not addressed in Walmart's motion.

2   Pls. Ex. 2, Response to Question 2 (Walmart's Responses to Plaintiffs' First Combined Discovery Requests).

**In re National Prescription Opiate Litigation, Slip Copy (2020)**
2020 WL 425965

| | |
|---|---|
| 3 | Abernathy Depo. at 24:4 to 25:6 (Doc. #: 3025-1). |
| 4 | Abernathy Depo. at 25:9-15 (Doc. #: 3025-1). |
| 5 | Hiland Depo. at 52:3 to 54:6, 170:17 to 171:2 (Doc. #: 3026-12) (01/22/2019); Abernathy Depo. at 25:1-5 (Doc. #: 3025-1). |
| 6 | Hiland Depo. at 268:22 to 270:20 (Doc. #: 3026-12) (01/22/2019). |
| 7 | Pls. Ex. 2, Response to Question 2 (Walmart's Responses to Plaintiffs' First Combined Discovery Requests); Abernathy Depo. at 80:2-20 (Doc. #: 3025-1). |
| 8 | Hiland Depo. at 293:8-23 (Doc. #: 3026-12) (01/22/2019). |
| 9 | Abernathy Depo. at 80:2-20, 152:11-18 (Doc. #: 3025-1). |
| 10 | Abernathy Depo. at 245:18-21, 254:2-10 (Doc. #: 3025-1). |
| 11 | Hiland Depo. at 311:16 to 312:11 (Doc. #: 3026-12) (01/22/2019). |
| 12 | In its reply brief, Walmart argues for the first time that it is entitled to summary judgment because Plaintiffs do not have expert testimony to show its suspicious order monitoring system was noncompliant. *See* Reply at 2 (Doc. #: 2512). The Court declines to address arguments raised for the first time in a reply brief. *See, e.g.*, *Ross v. Choice Hotels Int'l, Inc.*, 882 F. Supp.2d 951, 958 (S.D. Ohio 2012) ("a reply brief is not the proper place to raise an issue for the first time") (citations omitted). Nevertheless, the Court notes the record evidence suggests obvious deficiencies that a layperson could plainly recognize. Accordingly, a lack of expert testimony is not fatal to Plaintiffs' claim. *See, e.g.*, *United States v. Elliot*, 876 F.3d 855, 866 (6th Cir. 2017) (expert testimony was not necessary in light of "evidence of plainly improper prescribing practices that a lay juror could recognize as illegitimate"). |
| 13 | Walmart argues for the first time in its reply brief that Plaintiffs have not shown "the particular violation substantially interfered with public health and safety." Reply at 6 (Doc. #: 2512). As previously stated, the Court declines to address arguments raised for the first time in a reply brief. *See Ross*, 882 F. Supp.2d at 958. The Court further notes that, in denying the Manufacturer Defendants' motion for summary judgment on this issue, the Court found Plaintiffs had presented evidence sufficient to establish material fact issues regarding interference with public health and public safety interests. *See* Doc. #: 2578 at 3-4. The same analysis applies to Walmart's argument. |

**End of Document**   © 2021 Thomson Reuters. No claim to original U.S. Government Works.