# EXHIBIT C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION<br>OPIATE LITIGATION | )<br>)<br>) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO:<br>"*Track Three Cases*" | )<br>) | |
| | )<br>) | **RULING REGARDING DEPOSITION<br>OF WALMART CEO McMILLON** |

Earlier, the undersigned entered an order that, among other things, imposed sanctions upon defendant Walmart for failing to timely produce certain discovery. *See* docket no. 3700 ("*Sanctions Order*"). The discovery at issue included "(1) PowerPoint presentations to the Department of Justice, which was investigating Walmart's opioid-related conduct, (2) a nationwide listing of Blanket Refusals to Fill, and (3) a nationwide listing of Blocked Prescribers." *Id.* at 2.[1] One of the sanctions imposed upon Walmart was as follows:

Plaintiffs may depose, for 1.5 hours each, two additional fact witnesses of Plaintiffs'

---

[1] Walmart's national list of Blanket Refusals to Fill ("BRTF") identifies doctors regarding whom ***an individual Walmart pharmacist*** decided not to fill their opioid prescriptions. Walmart's national list of Blocked Prescribers identifies doctors regarding whom Walmart prohibited ***all of its pharmacists*** from filling their opioid prescriptions.
   The discovery at issue in the Sanctions Order also included "(1) policies, procedures, and manuals concerning Walmart's dispensing and self-distribution of opioids; (2) documents related to the Company's Opioid Stewardship program; and (3) Board-level Materials relating to Walmart's self-distribution and dispensing of controlled substances." *Id.* at 6 (internal quotation marks omitted).

choosing, at Walmart's cost, to take place as soon as reasonably possible. These witnesses may be individuals whom Plaintiffs already deposed, or new witnesses. Questioning will be limited to information contained in the [discovery at issue].

*Id.* at 12. Walmart did not object to the *Sanctions Order*.

Thereafter, Plaintiffs notified Walmart of the two additional fact witnesses whom Plaintiffs want to depose: Deborah Mack, Director of Pharmacy Practice Compliance; and Doug McMillon, Walmart's CEO.

Walmart objected to Plaintiffs' choice of CEO McMillon, and the parties submitted their positions to the Special Master via email. Along with its arguments, Walmart wrote: "Because the PEC's request for Mr. McMillon's deposition is harassing on its face, Walmart requests that the Special Master deny it outright. * * * Should the Special Master need additional information from Walmart on this issue, Walmart requests the opportunity to fully brief a motion for a protective order." Email from Tara Fumerton to Special Master (June 14, 2021). The Special Master concludes, however, that the information and argument submitted is sufficient.[2] For the reasons and as limited by the guidelines stated below, the deposition of McMillon may proceed.

In its objection, Walmart asserts that "'high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions,' particularly in an MDL context." Fumerton email (quoting *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002). But the *Bridgestone* MDL Judge **allowed** the deposition of the Chairman of the Board of Ford Motor Company. The *Bridgestone* court made the following observations:

---

[2] The Special Master also chooses the procedural mechanism of issuing this Ruling and allowing Walmart to object, rather than setting a full briefing schedule for a motion for protective order, in order to make the issue ripe for Court review as soon as possible.

- "the plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters," *id.*;

- "conduct and knowledge at Ford's highest corporate levels may well be relevant to the issues presented in this litigation," *id.*;

- "plaintiffs seek to depose Mr. Ford, not for purposes of a single personal injury case, but to depose him once for all of the hundreds of . . . cases pending in the MDL, the MDL class action, and many state court cases," *id.*; and

- "abusive deposition tactics" could be avoided by ordering "that the deposition be taken at Ford's headquarters and impos[ing] strict time limits on the questioning," *id.*

All of these factors weigh in favor of allowing McMillon's deposition here, as well. Plaintiffs offer evidence and colorable argument that McMillon has personal knowledge about and involvement in Walmart's adoption and use of Blanket Refusals to Fill and Blocked Prescribers Lists. Specifically, In October of 2016, McMillon bumped into a friend, Jerry Jones, who had lost a son to opioids and who was speaking at a conference on Prescription Drug Abuse Prevention. McMillon asked what Walmart could do to help Jones with his "mission," and McMillon made clear he was serious and not just asking to be polite. There are emails showing suggestions Jones made to McMillon, and McMillon forwarding those ideas to other Walmart executives. The emails cited by Plaintiffs do not say anything about BRTFs or Corporate Blocks specifically, but in the months immediately following, two things happened: (1) according to Jones, Walmart told him it would start "throwing technology" at the opioid crisis to "monitor prescriptions," and "if we detect over-prescribing, we are going to cut them off;" and (2) Walmart introduced new BRTF and Corporate Block policies.

Plaintiffs also offer evidence and colorable argument that McMillon has personal knowledge

3

about the PowerPoint presentations made by Walmart's counsel to the Department of Justice. One of these presentations discusses Walmart's adoption of its BRTF and Corporate Block policies, and there is evidence McMillon was consulted during the formulation and approval of Walmart's response to the DOJ investigation.

In sum, Plaintiffs have shown McMillon may have "personal knowledge of and involvement in certain relevant matters," *Bridgestone*, 205 F.R.D. at 536. These circumstances are unlike those in the other case cited by Walmart, where Priscilla Presley showed "she had no personal knowledge of the facts giving rise to the litigation." *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 892 (6th Cir. 1991). Moreover, the Sixth Circuit has warned against assuming that "harassment and abuse are 'inherent' in depositions of high-level corporate officers," or that their "deposition would be unduly burdensome." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901, 902 (6th Cir. 2012) (some internal quotation marks omitted).

Further, it cannot be gainsaid that "conduct and knowledge at [Walmart's] highest corporate levels may well be relevant to the issues presented in this litigation," and McMillon's testimony on the matters at issue may be relevant to "all of the hundreds of . . . cases pending in the MDL, the MDL class action, and many state court cases." *Bridgestone*, 205 F.R.D. at 536. It may be true, as Walmart argues, that certain information regarding the discovery at issue can be "more easily obtained from dozens of lower-level employees who were involved in the on-the-ground operations upon which plaintiffs' claims are based." (Fumerton email.) But it is also true that McMillon may have relevant information regarding the decisions to adopt the BRTF and Corporate Block policies that nobody else has. And as part of the sanction, Plaintiffs were allowed to choose any

4

knowledgeable fact witness, not the "most knowledgeable" or "most convenient" for Walmart.³

Finally, the deposition is already limited to 1.5 hours, and is already limited in subject matter to information contained in the documents addressed in the *Sanctions Order*. Plaintiffs are directed to conduct the deposition via video-conference, which will further limit any imposition on McMillon, and the undersigned will preside. These constraints ensure the deposition will not be abusive or harassing.

Accordingly, Walmart's objection to Plaintiffs' choice of McMillon as one of the two additional fact witness deponents allowed under the *Sanctions Order* is overruled.

---

³ Plaintiffs recite numerous questions they would ask McMillon in deposition that are related to the documents at issue and explain how his personal knowledge may be meaningfully different from other possible deponents. These include:
> [W]hy did it take so long for Walmart's compliance department to begin imposing corporate blocks on problematic prescribers based on the aggregate data that was available to it, but was not available to its thousands of individual pharmacists? Or why did Walmart delay allowing its pharmacists to impose a blanket refusal to fill on problematic prescribers, as opposed to forcing them to review and then fill out a form on every individual prescription? Walmart eventually took both of these steps, but only after Walmart's CEO was personally impacted by the opioid crisis as a result of the death of an acquaintance's adult child. * * * Did it really take Walmart's CEO hearing about the impact of the opioid epidemic from a friend in order for Walmart to take common-sense steps that some of its competitors were already doing? These are appropriate issues to explore with Walmart's Chief Executive Officer.

Email from Dean Kawamoto to Special Master (June 15, 2021). Also:
> [T]he [DOJ] powerpoint presents a "case study" of Doctor Diamond, a problematic prescriber who pled guilty to a 20-year sentence for the improper prescribing of opioids. Dr. Diamond was first brought to the attention of Walmart's compliance department in February 2014, but wasn't subject to a corporate block until February/March 2017. The record is replete with repeated requests from pharmacists expressing concerns regarding Dr. Diamond's prescriptions and seeking guidance from Walmart's compliance department. As Walmart's Chief Executive Officer, is Mr. McMillon satisfied with Walmart's response to Dr. Diamond? Is Mr. McMillon satisfied with the policies discussed in this powerpoint and Walmart's implementation of those policies?

*Id.*

Given the nearness of the Track Three trial, and so that this issue may be finally resolved quickly by the Court, any objection to this *Ruling* must be filed on or before June 23, 2021, and any response thereto must be filed on or before June 28, 2021.

**IT IS SO ORDERED.**

                                                  /s/ *David R. Cohen*
                                                  **DAVID R. COHEN**
                                                  **SPECIAL MASTER**

**Dated:** June 16, 2021