# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| *In re Walmart Inc. Securities Litigation* ) ) ) ) ) ) ) | **Case No. 1:21-cv-0055-CFC** **(Consolidated)** **CLASS ACTION** |

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW

Dated: October 8, 2021

Of Counsel:

Sean M. Berkowitz
Nicholas J. Siciliano
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel.: +1.312.876.7700
Fax: +1.312.993.9767
Email: sean.berkowitz@lw.com
Email: nicholas.siciliano@lw.com

*Counsel for Defendants*

Robert W. Whetzel (#2288)
Raymond J. DiCamillo (#3188)
RICHARDS, LAYTON &
FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
Tel.:  +1.302.651.7700
Fax:  +1.302.651.7701
Email: whetzel@rlf.com
Email: dicamillo@rlf.com

*Counsel for Defendants*

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  FACTUAL BACKGROUND.......................................................................3

    A.   Walmart and the Individual Defendants ...............................................3

    B.   Walmart's Pharmacy Operations ..........................................................3

    C.   Walmart Discloses Opioid-Related Litigation and
        Investigations.........................................................................................4

    D.   *ProPublica* Publishes an Article About the DOJ Investigation,
        and Walmart's Stock Price Quickly Rebounds.....................................5

    E.   Walmart Sues DOJ and DEA, and DOJ Sues Walmart ........................6

III. ARGUMENT................................................................................................7

    A.   Plaintiffs Do Not Allege an Actionable Misstatement or
        Omission.................................................................................................9

        1.   Walmart Did Not Violate Item 103 ..........................................10

        2.   Walmart Did Not Violate ASC 450 ..........................................13

            a.   Plaintiffs' Contention Is No More than
                Disagreement with Walmart's Accounting
                Judgment........................................................................14

            b.   Walmart Did Not Have to Disclose the 2011 MOA ......16

            c.   Walmart Disclosed the DOJ Investigation in
                Accordance with ASC 450 .............................................17

        3.   Walmart Did Not Violate Items 105 or 303 .............................19

        4.   "Inherently Aspirational" Statements and "Puffery" in
            Walmart's Code of Ethics and Press Release Are Not
            Actionable .................................................................................22

        5.   The SOX Certifications Are Not Actionable.............................24

    B.   Plaintiffs Do Not Allege a Strong Inference of Scienter ....................25

        1.   Plaintiffs Do Not Establish a Strong Inference of Scienter
            as to the Individual Defendants.................................................26

i

2.      Plaintiffs Do Not Establish a Strong Inference of Scienter
        as to Walmart ............................................................................ 31

C.      Plaintiffs Do Not Allege Loss Causation ............................................ 32

IV.     CONCLUSION .................................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Axar Master Fund, Ltd. v. Bedford*,
   308 F. Supp. 3d 743 (S.D.N.Y. 2018) ...............................................................22

*Belmont v. MB Inv. P'rs, Inc.*,
   708 F.3d 470 (3d Cir. 2013) .................................................................................8

*Bien v. LifeLock Inc.*,
   2015 WL 12819154 (D. Ariz. Jul. 21, 2015)......................................................15

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017).........................................................................................16

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ..............................................................................8, 9

*Cheung v. Keyuan Petrochemicals, Inc.*,
   2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) .....................................................31

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ......................................................................... 10, 13

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009)............................................................ passim

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
   928 F. Supp. 2d 705 (S.D.N.Y. 2013) ......................................................... 11, 17

*Eckert v. Paypal Holdings, Inc.*,
   831 F. App'x 366 (9th Cir. 2020)........................................................................29

*Ferris v. Wynn Resorts Ltd.*,
   462 F. Supp. 3d 1101 (D. Nev. 2020)..................................................................21

*Gaer v. Educ. Mgmt. Corp.*,
   2011 WL 7277447 (W.D. Pa. Aug. 30, 2011).....................................................21

*Gold v. Ford Motor Co.*,
   577 F. App'x 120 (3d Cir. 2014) ..........................................................................8

*GSC Partners CDO Fund v. Washington*,
 368 F.3d 228 (3d Cir. 2004) ..................................................................25

*Hill v. Gozani*,
 638 F.3d 40 (1st Cir. 2011)...................................................................20

*Howard v. Arconic Inc.*,
 395 F. Supp. 3d 516 (W.D. Pa. 2019)....................................... 10, 22, 31

*Ieradi v. Mylan Labs., Inc.*,
 230 F.3d 594 (3d Cir. 2000) ..................................................................13

*In re Aceto Corp. Sec. Litig.*,
 2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) .......................................14

*In re Aetna, Inc. Sec. Litig.*,
 617 F.3d 272 (3d Cir. 2010) ............................................................7, 10

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) .......................................24

*In re Anadigics, Inc. Sec. Litig.*,
 2011 WL 4594845 (D.N.J. Sept. 30, 2011) ..........................................30

*In re Audible Inc. Sec. Litig.*,
 2007 WL 1062986 (D.N.J. Apr. 3, 2007)................................................9

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
 980 F. Supp. 2d 564 (S.D.N.Y. 2013) .......................................... 17, 18

*In re Digital Island Sec. Litig.*,
 357 F.3d 322 (3d Cir. 2004) ..................................................................25

*In re Elecs. For Imaging, Inc. Sec. Litig.*,
 2019 WL 397981 (D.N.J. Jan. 31, 2019)..............................................26

*In re Facebook, Inc. Sec. Litig.*,
 405 F. Supp. 3d 809 (N.D. Cal. 2019)..................................................11

*In re Galena Biopharma, Inc. Sec. Litig.*,
 2019 WL 5957859 (D.N.J. Nov. 12, 2019) ................................... 11, 13

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017),
    *aff'd*, 905 F.3d 106 (3d Cir. 2018) ............................................................... 14, 15

*In re Intelligroup Sec. Litig.*,
    468 F. Supp. 2d 670 (D.N.J. 2006) ................................................................9, 10

*In re Lions Gate Ent. Corp. Sec. Litig.*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ................................................. 11, 12, 17, 21

*In re Merck & Co. Sec. Litig.*,
    432 F.3d 261 (3d Cir. 2005) .................................................................................33

*In re NAHC, Inc. Sec. Litig.*,
    2001 WL 1241007 (E.D. Pa. Oct. 17, 2001) ............................................. 28, 29

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002) ..................................................................................8

*In re SeaChange Int'l, Inc.*,
    2004 WL 240317 (D. Mass. Feb. 6, 2004) .........................................................19

*In re Yukos Oil Co. Sec. Litig.*,
    2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006).....................................................17

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) .................................................................................25

*Israeli v. Team Telecom Int'l, Ltd.*,
    2006 WL 2883237 (D.N.J. Oct. 10, 2006) ................................................... 26, 27

*Janbay v. Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012)....................................................33

*JPMorgan Chase & Co. v. Comm'r of Internal Revenue*,
    458 F.3d 564 (7th Cir. 2006) ...............................................................................14

*Klein v. Autek*,
    147 F. App'x 270 (3d Cir. 2005) .........................................................................28

*Lewis v. YRC Worldwide Inc.*,
    2020 WL 1493915 (N.D.N.Y. Mar. 27, 2020) ...................................................24

*Lord Abbett Affiliated Fund, Inc. v. Navient*,
    363 F. Supp. 3d 476 (D. Del. 2019)....................................................................24

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ...............................................................32

*Martin v. GNC Holdings, Inc.*,
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017).......................................................28

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) ............................................................33

*N. Sound Cap. LLC v. Merck & Co.*,
    702 F. App'x 75 (3d Cir. 2017) ............................................................16

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010) ............................................ 27, 30

*Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)....................................................................... 15, 25

*Ong v. Chipotle Mexican Grill, Inc.*,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) ....................................................24

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ...................................................... 19, 20, 27

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ............................................................ passim

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ............................................................23

*Salim v. Mobile Telesystems PJSC*,
    2021 WL 796088 (E.D.N.Y. Mar. 1, 2021)................................................. 13, 19

*Sapir v. Averback*,
    2016 WL 554581 (D.N.J. Feb. 10, 2016).......................................................26

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ............................................................29

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*,
    499 F. Supp. 3d 49 (D. Del. Nov. 4, 2020).................................................. 29, 33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...........................................................................7, 26

*United States v. Crop Growers Corp.*,
    954 F. Supp. 335 (D.D.C. 1997)........................................................11

*Veal v. LendingClub Corp.*,
    423 F. Supp. 3d 785 (N.D. Cal. 2019), *aff'd*, 2021 WL 4281301 (9th Cir. Sept.
    21, 2021) ..................................................................................17

*Walmart Inc. v. U.S. Dep't of Justice*,
    No. 4:20-cv-00817 (E.D. Tex. Oct. 22, 2020)......................................... 6, 7, 33

## STATUTES

15 U.S.C. § 78u–4(b)(1) ................................................................8

15 U.S.C. § 78u-4(b)(2) ................................................................25

## RULES

Fed. R. Civ. P. 9(b) ................................................................7, 8

## REGULATIONS

17 C.F.R. § 229.103 ................................................................11

17 C.F.R. § 229.105 ................................................................19

17 C.F.R. § 229.303 ................................................................21

17 C.F.R. § 240.10b-5................................................................31

# GLOSSARY OF TERMS

The following terms are used in this memorandum:

| | |
|---|---|
| 2011 MOA: | Administrative Memorandum of Agreement between the United States Department of Justice, Drug Enforcement Administration, and Wal-Mart Stores, Inc., dated March 17, 2011, attached to the Declaration of Raymond J. DiCamillo as Exhibit 13 |
| Board: | Walmart Inc.'s Board of Directors |
| CAC or Complaint: | Amended Class Action Complaint for Violations of the Federal Securities Laws, filed July 12, 2021, Dkt. No. 29 |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statements: | Statements challenged as false or misleading in violation of Section 10(b) of the Securities Exchange Act in the Amended Class Action Complaint, as detailed in ¶¶ 293-350 |
| Class Period: | March 30, 2016 through December 22, 2020, inclusive |
| Code: | Walmart Inc.'s Code of Ethics and Statement of Ethics, attached to the Declaration of Raymond J. DiCamillo as Exhibit 12 |
| Company: | Walmart Inc. |
| Controlled Substances Act, or CSA: | The U.S. Comprehensive Drug Abuse Prevention and Control Act of 1970, 1970 U.S.C.C.A.N. 4566, 4571-72 |
| DEA: | U.S. Drug Enforcement Administration |
| Defendants: | Walmart Inc., C. Douglas McMillon, M. Brett Biggs, and David Chojnowski |
| EDTX: | The Eastern District of Texas |
| Form 10-K: | Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, filed with the SEC on Form 10-K |

| Form 10-Q: | Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, filed with the SEC on Form 10-Q |
|---|---|
| GAAP: | Generally Accepted Accounting Principles |
| Individual Defendants: | C. Douglas McMillon, M. Brett Biggs, and David Chojnowski |
| DOJ: | U.S. Department of Justice |
| DOJ Complaint: | Complaint filed in *U.S. v. Walmart Inc. and Wal-Mart Stores East, LP*, 1:99-mc-09999 (D. Del.), dated December 22, 2020, attached to Plaintiffs' Complaint as Ex. A |
| DOJ Investigation: | U.S. Department of Justice investigation related to Walmart Inc.'s nationwide controlled substance dispensing practices involving the sale of opioids |
| MDL: | Multidistrict litigation pending in the United States District Court for the Northern District of Ohio, captioned *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2805 (N.D. Ohio) |
| Plaintiffs: | Kim Kengle, as trustee of the Kim K. Kengle 2000 Trust, and Roseanne Lacy |
| *ProPublica* Article: | Article published on www.propublica.org on March 25, 2020, entitled "Walmart Was Almost Charged Criminally Over Opioids. Trump Appointees Killed the Indictment," attached to the Declaration of Raymond J. DiCamillo as Exhibit 8 |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| SEC: | U.S. Securities and Exchange Commission |
| SOX: | The Sarbanes-Oxley Act of 2002 |
| Walmart: | Walmart Inc. |

## I.    INTRODUCTION

More than three years ago, Walmart disclosed in its SEC filings that it had been named in various lawsuits concerning the impact of widespread opioid abuse. Soon after, it disclosed that the Company was responding to governmental subpoenas, information requests, and investigations related to its nationwide controlled-substance dispensing practices involving opioids.  Walmart warned investors that it could not provide any assurance as to the scope or outcome of the investigations—or whether its business, financial condition, or results of operations would be materially and adversely affected.

Walmart updated these disclosures in each of its quarterly SEC filings over the next two years.  Then in March 2020, *ProPublica* published an article asserting that DOJ "almost" charged Walmart criminally for alleged Controlled Substance Act violations.  The article relied on unsubstantiated assertions by DOJ and claimed that in 2018, prosecutors from the EDTX wanted to indict and embarrass Walmart to extract a large civil settlement.  But DOJ never filed criminal charges.

In fact, in October 2020, *Walmart* sued DOJ and DEA, seeking a declaration that it had *not* violated the CSA.  In that filing, Walmart noted that DOJ planned to bring a civil action against the Company.  Sure enough, DOJ filed a civil lawsuit two months later, asserting that Walmart and its pharmacists had violated the CSA.  Both matters remain pending.

1

This lawsuit originated shortly after the DOJ Complaint was filed.  Plaintiffs allege that Walmart and its CEO (C. Douglas McMillon), CFO (M. Brett Biggs), and Controller (David Chojnowski) violated the federal securities laws by concealing the DOJ Investigation and its potential consequences.

Many problems plague these allegations, any one of which requires dismissal under the PSLRA's heightened pleading standards.  To start, Plaintiffs have not pled with particularity that Defendants made any false or misleading statements.  On the contrary, Walmart disclosed the DOJ Investigation (and other investigations)—*in 2018*—and explained that it could not predict the investigations' scope or outcome, or assure its business would not suffer a material adverse effect.  No SEC regulation or accounting rule required Walmart to disclose anything more.  The CAC should be dismissed on this ground alone.

Plaintiffs' scienter allegations are equally deficient.  To survive a motion to dismiss, Plaintiffs must allege strong circumstantial evidence, on an individualized basis, showing that the Defendants knew (or recklessly disregarded) that their statements were false when made.  Plaintiffs come nowhere close to meeting this burden.  The CAC barely mentions the Individual Defendants at all—much less pleads individualized, particularized facts supporting a strong and cogent inference that Defendants acted with an intent to deceive.

Finally, Plaintiffs have failed to plead loss causation.  Plaintiffs point to the

2

*ProPublica* Article and the DOJ Complaint as alleged "corrective disclosures"—but do not try to explain how either revealed a previously concealed truth in Walmart's statements.   At most, the "disclosures" repeated already-public information or caused the market to speculate about potential wrongdoing, which cannot support a loss-causation theory.   The CAC should be dismissed.

## II.    FACTUAL BACKGROUND

### A.    Walmart and the Individual Defendants

Walmart is one of the largest retailers in the United States.   CAC ¶ 8.   C. Douglas McMillon has held various positions at Walmart, serving as President and CEO since 2014.   *Id.* ¶ 39.   M. Brett Biggs has been Walmart's CFO since January 2016, and David Chojnowski has been the controller since January 2017.[1]   *Id.* ¶¶ 40-41.

Walmart operates through three reporting segments:   Walmart U.S., Walmart International, and Sam's Club.   Ex. 5 at 7.   Walmart's Class Period annual revenue was about $500 billion, and its total assets exceeded $200 billion.   CAC ¶ 289; Exs. 3 at 84; 6 at 76.

### B.    Walmart's Pharmacy Operations

The Walmart U.S. segment sells many different products and categorizes

---

[1] Plaintiffs incorrectly assert that Chojnowski serves on Walmart's Audit Committee.   CAC ¶ 41.   That is a Board committee, and Chojnowski is not on the Board.

them into three units: Grocery, General Merchandise, and Health and Wellness. CAC ¶ 87; Ex. 5 at 8-9.  Health and Wellness is the smallest of the three units. During the Class Period, it represented less than 11% of Walmart U.S.'s total sales, and less than 8% of the Company's total sales.  Exs. 3 at 9, 83; 6 at 75-76.  The Company's revenues from prescription-medication sales comprise an even smaller portion of the business.  *E.g.*, Ex. 6 at 8 (prescription-medication sales comprise only one sales category under the Health and Wellness unit).

Pharmacists at Walmart retail pharmacies fill patient prescriptions written by licensed prescribers.  CAC ¶ 75.  A fraction of those prescriptions are for opioid medications.  CAC Ex. D at 32-33.  Through a subsidiary, Walmart also distributed certain controlled substances to Walmart-operated pharmacies for a time before May 2018.  CAC ¶ 133.  Walmart has never manufactured or marketed controlled substances, nor has it distributed controlled substances to any third-party pharmacy.

Walmart designed a system of controls for the self-distribution of controlled substances, including opioids.  *Id.* ¶¶ 149-150.  The Company also designed controls for its controlled-substance dispensing.  *Id*. ¶¶ 98-99.

### C.    Walmart Discloses Opioid-Related Litigation and Investigations

Like other companies that have dispensed or distributed prescription opioid medications, Walmart has been the subject of lawsuits and investigations in recent years.  Walmart was first named as a defendant in an opioid-related lawsuit in March

2017.  Nine months later, that action was transferred to the MDL.  CAC ¶¶ 58-59, 301.  Walmart disclosed the MDL in its March 30, 2018 Form 10-K and has continued to update the disclosure as the MDL has progressed.  Walmart denies the allegations in the MDL, which is ongoing.  *Id.* ¶¶ 301, 303-304.

The Company also has "been responding to subpoenas, information requests and investigations from governmental entities related to nationwide controlled substance dispensing practices involving the sale of opioids."  *Id.* ¶ 303.  Walmart disclosed those investigations beginning in June 2018, and as with the MDL, has updated the disclosures since then.  Exs. 4 at 16; 5 at 73; 6 at 23, 72.  Walmart has consistently told investors that it "can provide no assurance as to the scope and outcome of these matters and no assurance as to whether its business, financial condition or results of operations will not be materially adversely affected."  *Id.*

### D.  *ProPublica* Publishes an Article About the DOJ Investigation, and Walmart's Stock Price Quickly Rebounds

Two years after Walmart disclosed the MDL and opioid-related investigations, *ProPublica* published an article about one of the investigations.  Among other things, the article asserted that DOJ attorneys in EDTX wanted to charge Walmart criminally in 2018, but ultimately did not after more senior DOJ officials considered the matter.  CAC ¶ 351; Ex. 8 at 2-4.

The article glossed over what really happened, as reflected in contemporaneous letters sent by Walmart's counsel.  Walmart maintained that the

EDTX lawyers had threatened an unsupported criminal indictment to force an unjustified civil settlement—actions that violated DOJ's own internal policies and ethics rules. *See* Ex. 9. When Walmart sought fair consideration of the law and facts, DOJ assigned independent career prosecutors to review the matter, who declined to pursue criminal charges. CAC ¶¶ 235-236.

Walmart's stock price fell the day of the *ProPublica* Article, but quickly rebounded. Just five days later, Walmart shares closed at $115.19—higher than the price before the article. Ex. 10. By mid-April 2020, Walmart shares traded 20% above the price on the day of the article. *Id.* Walmart's stock price continued to rise over the next few months. By mid-December 2020, Walmart traded around $145 (over 30% higher than the price on the day of the *ProPublica* Article). *Id.*

### E.    Walmart Sues DOJ and DEA, and DOJ Sues Walmart

The various lawsuits and investigations continued into 2020. On October 22, 2020, Walmart sued DOJ and DEA. *See Walmart Inc. v. U.S. Dep't of Justice*, No. 4:20-cv-00817 (E.D. Tex. Oct. 22, 2020) (Ex. 11). Walmart alleged that the government was interpreting the CSA improperly and trying to blame Walmart (and others) for the government's own (and others') failures, and sought a declaration that Walmart's pharmacists were not liable under the CSA for failing to second-guess licensed doctors' prescribing practices. *Id*. at 52. Walmart noted its belief that the government "intend[ed] to pursue a civil enforcement action against Walmart" for

6

alleged CSA violations.[2]  *Id.* ¶ 115.[3]

Two months later, DOJ filed a civil complaint, alleging that Walmart violated the CSA as a controlled-substances dispenser and distributor.   CAC Ex. A. Walmart's motion to dismiss is pending.  Walmart's share price fell slightly the day DOJ filed its lawsuit, from $145.97 to $144.20.  Ex. 10.  But again, the stock quickly recovered.  Less than two weeks later, Walmart shares eclipsed $146, higher than the price before the DOJ Complaint.  *Id.*  Plaintiffs' predecessors then filed this lawsuit, claiming erroneously that Defendants had failed to disclose the DOJ Investigation and related matters.

## III.   ARGUMENT

Plaintiffs' claims are subject to the rigorous, heightened pleading requirements of Rule 9(b) and the PSLRA.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007); *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277-78 (3d Cir. 2010) (PSLRA imposes "exacting and distinct pleading requirements for securities fraud actions").  Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requires Plaintiffs to "specify 'the who, what, when, where, and how'"

---

[2] In a press release issued the same day, Walmart similarly stated that DOJ was threatening a lawsuit against the Company.  *See* Ex. 7.

[3] Walmart's appeal from dismissal of its suit on jurisdictional grounds is pending in the U.S. Court of Appeals for the Fifth Circuit.

for each element of their claim.  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).  The "PSLRA imposes a dramatically higher standard" (*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc*., 686 F. Supp. 2d 404, 414 (D. Del. 2009)) and "another layer of factual particularity" (*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).  The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief," to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

The PSLRA also "enhances" Rule 9(b) and requires Plaintiffs to state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that Defendants acted with "an intent to deceive, manipulate, or defraud."  *Rahman v. Kid Brands, Inc*., 736 F.3d 237, 242 (3d Cir. 2013).  Plaintiffs must allege facts that "constitute circumstantial evidence of either reckless or conscious [mis]behavior."  *Gold v. Ford Motor Co.*, 577 F. App'x 120, 123 (3d Cir. 2014).  Recklessness is an "extreme departure from the standards of ordinary care," and must "present[] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *Belmont v. MB Inv. P'rs, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013).  To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as

8

compelling as any opposing inference of nonfraudulent intent." *Rahman*, 736 F.3d at 242; *see also In re Audible Inc. Sec. Litig.*, 2007 WL 1062986, at *13 (D.N.J. Apr. 3, 2007) ("[B]roadly worded conclusory statements . . . do not constitute specific 'facts giving rise to a strong inference of conscious wrongdoing' on the part of Defendants.").

Plaintiffs must also plead loss causation—*i.e.*, that Defendants' alleged misrepresentation "concealed something from the market that, when disclosed, negatively affected the value of the security." *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 692 (D.N.J. 2006). A complaint must be dismissed if it fails to plead *any* of these elements—the CAC's failure to plead all three requires its dismissal. *See Chubb*, 394 F.3d at 144-45 ("the court shall" dismiss a complaint that fails to meet the "substantially heighted[ed]" requirements).

## A. **Plaintiffs Do Not Allege an Actionable Misstatement or Omission**

Plaintiffs challenge *all* of the Company's Class-Period Forms 10-K and 10-Q as false or misleading. Plaintiffs assert that Defendants violated SEC Regulation S-K (Items 103, 105, and 303) and GAAP (ASC 450) because Walmart allegedly "concealed the DOJ Investigation and the risks related to the Company's failure to comply with the CSA." CAC ¶¶ 5-6. Plaintiffs also challenge certain statements in Walmart's Code of Ethics and Statement of Ethics, an October 26, 2017 press release, and McMillon's and Biggs's SOX Certifications. Plaintiffs have not met

9

their "rigorous" and "exacting" burden to plead material falsity with particularity, and the CAC should be dismissed. *See In re Aetna*, 617 F.3d at 277-78; *Intelligroup*, 468 F. Supp. 2d at 676.

### 1.   Walmart Did Not Violate Item 103

Plaintiffs first allege that Walmart violated Regulation S-K Item 103 ("Legal Proceedings") "by failing to disclose the DOJ Investigation." CAC ¶ 322. Plaintiffs argue that Walmart improperly failed to disclose that: (i) EDTX "was contemplating indicting the Company"; (ii) the "contemplated indictment stemmed from the DOJ Investigation . . . which began on December 7, 2016"; (iii) "DOJ's claims were based on Defendants' decade long" CSA violations; and (iv) "DOJ was seeking criminal relief and a billion dollars to resolve the matter civilly." *Id.* But Item 103 required none of these disclosures.

Plaintiffs' allegations rest on the incorrect premise that Walmart had to disclose "CSA violations." Disclosure is "not a rite of confession, and companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 572 (W.D. Pa. 2019) (same). No court has found that Walmart violated the CSA, and Walmart strongly believes it did not. Walmart did not have to disclose and admit unproven violations. *See In re Galena Biopharma, Inc. Sec. Litig.*, 2019 WL 5957859, at *10 (D.N.J.

10

Nov. 12, 2019); *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 836 (N.D. Cal. 2019) ("[C]ompanies are not required to engage in 'self-flagellation' by disclosing unproven allegations.").

Item 103 did not require Walmart to disclose the DOJ Investigation, either.  A "government investigation, without more, does not trigger a generalized duty to disclose."  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016)*.  Item 103 only requires companies to "[d]escribe briefly any material pending legal proceedings" to which the company is a party, and "any such proceedings *known* to be contemplated by governmental authorities."  17 C.F.R. § 229.103(a) (emphasis added).  An "investigation alone is not a 'pending legal proceeding' or a 'proceeding[] known to be contemplated by governmental authorities' under Item 103."  *Lions Gate*, 165 F. Supp. 3d at 18; *see also City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.,* 928 F. Supp. 2d 705, 718 (S.D.N.Y. 2013) (no duty to disclose pending state-attorneys-general investigations under Item 103); *United States v. Crop Growers Corp*., 954 F. Supp. 335, 347 (D.D.C. 1997) (Item 103 "does not require" disclosure of "uncharged criminal conduct").

Indeed, Item 103 instructs issuers to "[i]nclude the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, [and] a description of the factual basis" of the suit.  17 C.F.R. § 229.103.  Walmart "could not have provided any of this information" during the Class Period

11

because EDTX never filed a criminal action.  *Lions Gate*, 165 F. Supp. 3d at 19.

Nor did the EDTX prosecutor's March 28, 2018 notification "of her intention to indict the Company" (CAC ¶ 212) mark the beginning of a "proceeding[] known to be contemplated" under Item 103.  *Lions Gate*, 165 F. Supp. 3d at 19.  On that day, the prosecutor abruptly told Company counsel that she intended to present an indictment against Walmart as a co-conspirator with a previously indicted doctor.  CAC ¶¶ 200-201, 212-213; Ex. 9.  But she agreed to postpone any potential indictment so the parties could discuss her theory of liability.  *Id*.  The next month, Walmart met with EDTX prosecutors, who said they planned to indict and embarrass the Company.  CAC ¶ 217; Ex. 9.  But DOJ declined to pursue criminal charges a few months later.  CAC ¶ 231.  In fact, no criminal action "was ever brought" against Walmart.  *Lions Gate*, 165 F. Supp. 3d at 19.

In any event, after Walmart met with the EDTX prosecutors in May 2018, it disclosed the DOJ Investigation in its next Form 10-Q.  CAC ¶ 303.  In June 2018, Walmart stated that it had been "responding to subpoenas, information requests, and investigations from governmental entities related to nationwide controlled substance dispensing practices involving the sale of opioids."  *Id*.  This included, but was not limited to, the DOJ Investigation.  Walmart added that it could "provide no assurance as to the *scope* and *outcome* of these matters, and no assurance as to whether its business, financial condition, or results of operations *will not be materially adversely*

12

*affected*." *Id.* (emphasis added).  Walmart's disclosure continued to evolve—noting, for example, when the investigations expanded to encompass Walmart's dispensing *and* distribution practices.  *See* Exs. 5-6.  By disclosing the "government investigations" and their "potential legal ramifications," Walmart complied with any potential Item 103 obligations.  *Galena*, 2019 WL 5957859, at *10-11; *see also Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 599 (3d Cir. 2000) (similar disclosures were "more than sufficient to put potential investors . . . on notice" that company could be subject to government actions); *UBS*, 752 F.3d at 184 ("By disclosing its involvement in multiple legal proceedings and government investigations and indicating that its involvement could expose UBS 'to substantial monetary damages and legal defense costs' . . . UBS complied with its disclosure obligations[.]").[4]

### 2.    Walmart Did Not Violate ASC 450

Plaintiffs also assert that Walmart's Class-Period Forms 10-Q and 10-K violated GAAP—specifically ASC 450—by "knowingly" failing to (1) disclose the 2011 MOA as a "loss contingency in Walmart's financial statements"; and (2) disclose and accrue the DOJ Investigation as a "contingent liability."  CAC ¶¶

---

[4] Indeed, had Walmart disclosed—as Plaintiffs suggest (CAC ¶ 305)—that it was facing imminent indictment, *that* disclosure would have been false.  By August 31, 2018, the "DOJ informed Walmart that it was declining to criminally prosecute the Company."  *Id.* ¶ 231.  If Walmart would have made such a premature disclosure, Plaintiffs "would undoubtedly have taken issue with" it.  *See Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *8 (E.D.N.Y. Mar. 1, 2021).

310, 319-320.  These allegations fail for many reasons.

### a. Plaintiffs' Contention Is No More than Disagreement with Walmart's Accounting Judgment

Walmart has not restated its financial statements or admitted to any GAAP violations.  Plaintiffs' claim, therefore, "amounts to mere disagreement with [the Company's] accounting judgment," which "[c]ourts have routinely rejected" as a basis for securities fraud.  *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *7 (E.D.N.Y. Aug. 6, 2019).

That is because GAAP is "far from" a "canonical set of rules," and "tolerate[s] a range of 'reasonable' treatments, leaving the choice . . . to management." *JPMorgan Chase & Co. v. Comm'r of Internal Revenue*, 458 F.3d 564, 569 (7th Cir. 2006) (citation omitted).  ASC 450—the accounting standard that Plaintiffs identify—calls for disclosure of loss contingencies where it is "probable" that a liability has been incurred at the date of the financial statements *and* the amount of that liability can be "reasonably estimated," or where there is "at least a reasonable possibility" that a loss may have been incurred.  ASC 450-20-25-2, 50-3.  "These are not the kind of fixed rules that would qualify as objective standards."  *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018).

Indeed, because ASC 450 is inherently "subjective," whether to make a disclosure or accrual is a matter of opinion.  *See id.*  An opinion "may be actionable

as (1) an untrue statement of material fact if the opinion is both incorrect (*i.e.*, objectively false) and not genuinely believed (*i.e.*, subjectively false), or (2) misleading if the speaker omits material facts underlying the basis for the opinion 'if those facts conflict with what a reasonable investor would take from the statement itself.'" *Id.* at *12 (quoting *Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)).

Plaintiffs do not allege either. They do not allege that the Individual Defendants played any role in determining whether the 2011 MOA or the DOJ Investigation should have been disclosed or accrued under ASC 450, much less that the Individual Defendants knew GAAP required additional disclosures and chose not to make such disclosures. This is fatal to Plaintiffs' claims. *See Hertz*, 2017 WL 1536223, at *38 ("Plaintiffs have failed to plead facts which would create a strong inference that Defendants knew their financials were not GAAP compliant when the statements were issued, and they have likewise failed to plead that Defendants knowingly or recklessly omitted that fact from their statements.").[5]

---

[5] That Walmart told investors it could not predict the investigations' scope or outcome or assure its business would not suffer a material adverse effect also undermines Plaintiffs' suggestion that Walmart failed to disclose a potential loss. *See Omnicare*, 575 U.S. at 190 ("[A]n investor reads each statement within such a document, whether of fact or of opinion, in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information."); *Bien v. LifeLock Inc.*, 2015 WL 12819154, at *5 (D. Ariz. Jul. 21, 2015) (given defendants' "negative" disclosures, including anticipation of FTC investigation, the court could not

### b.     Walmart Did Not Have to Disclose the 2011 MOA

Plaintiffs' GAAP claims fail for other reasons, too.  For example, Plaintiffs assert that *in 2016*, Walmart should have disclosed that it "violated the 2011 MOA" and it "was reasonably possible that" those violations "would result in a material loss."  CAC ¶ 309.  This is wrong for at least two reasons.

First, ASC 450 did not require disclosure of the 2011 MOA.  That agreement *expired* a year before the Class Period began (CAC ¶ 188), so it was not a "pending or threatened litigation."  *See* ASC 450-20-55-10 ("disclosure is required with respect to pending or threatened litigation and actual or possible claims and assessments").[6]

Second, ASC 450 did not require Walmart to disclose it "had violated the 2011 MOA" or that it would suffer a "material loss."  CAC ¶ 309.  Plaintiffs' premise—that Walmart violated the CSA (and therefore the 2011 MOA)—comes directly from unproven allegations in the DOJ Complaint.  *See* CAC ¶¶ 63-241.  Plaintiffs cannot establish CSA violations "simply because they appear in" a government-agency's complaint.  *See Veal v. LendingClub Corp.*, 423 F. Supp. 3d

---

conclude that failure to disclose more-specific information rendered the opinion misleading to a reasonable person reading the statement fairly and in context).

[6] Any claim that the Company should have disclosed the 2011 MOA before the Class Period is barred by the five-year statute of repose.  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042 (2017); *N. Sound Cap. LLC v. Merck & Co.*, 702 F. App'x 75, at *79-80 (3d Cir. 2017).

785, 811 (N.D. Cal. 2019), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021); *see also In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *16 (S.D.N.Y. Oct. 25, 2006) (company was not required "to disclose the speculative possibility" that it violated the law and would suffer a material loss as a result); *supra* Section III.A.1.

**c.   Walmart Disclosed the DOJ Investigation in Accordance with ASC 450**

Plaintiffs also assert that Walmart should have (1) disclosed the DOJ Investigation "as a contingent liability" *before* June 2018; and (2) accrued $1 billion *after* June 2018.  CAC ¶¶ 319-320.  As to the first point, Plaintiffs concede the EDTX prosecutor did not even mention the possibility of a criminal indictment until *March 2018*, and did not discuss it with Walmart until *May 2018*.  CAC ¶¶ 212-216.  ASC 450 states that a loss-contingency disclosure should be made "if there is at least a reasonable possibility that a loss . . . *may have been incurred*[.]"  ASC 450-50-3. Under Plaintiffs' own allegations, Walmart could not have been aware that a loss "may have been incurred" until May 2018 at the earliest—after which Walmart promptly disclosed the investigations.  Before that time, the DOJ Investigation cannot have been a "pending or threatened litigation" and did not require disclosure under ASC 450.  *See Lions Gate*, 165 F. Supp. 3d at 21-22; *City of Westland*, 928 F. Supp. 2d at 718 ("state investigations were not pending or threatened litigation" under ASC 450); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 583-84 (S.D.N.Y. 2013) (investigations did not have to be disclosed under ASC

17

450).

Nor did ASC 450 require Walmart to accrue $1 billion.  ASC 450 states that an "estimated loss from a loss contingency shall be accrued . . . if both the following conditions are met":  (a) "[i]nformation available before the financial statements are issued . . . indicates that it is *probable that . . . a liability had been incurred at the date of the financial statements*"; and (b) the "amount of loss can be *reasonably estimated*."  ASC 450-25-2 (emphasis added).  Plaintiffs do not allege either prong with particularity, and more importantly, do not allege that Defendants *believed* that $1 billion (or any other amount) was a "reasonable estimate" of "probable" liability.

Still, Walmart was not silent about potential losses.  Walmart disclosed that it could provide no assurance that its business, financial condition, and results of operations would not be materially adversely affected by the opioid investigations.  No "investor could read these disclosures without understanding that indeterminate potential losses . . . could later materialize."  *Bank of Am.*, 980 F. Supp. 2d at 580.  Walmart had no duty to say more.  *Id.*  That an EDTX prosecutor referenced $1 billion at a May 2018 meeting does not change the analysis.  CAC ¶ 217.  The comment was not made as part of settlement negotiations between the parties.  Just the opposite:  Walmart believed the EDTX prosecutor improperly threatened criminal charges to extract a civil penalty untethered to the facts and law.  Indeed, *more than three years have passed* since that meeting, and Walmart has paid nothing

to DOJ.  *See Salim*, 2021 WL 796088, at *7 (rejecting ASC 450 argument where "circumstances were far less obvious and straightforward" than plaintiffs claimed).

### 3. Walmart Did Not Violate Items 105 or 303

Plaintiffs next assert that Walmart violated Regulation S-K Items 105 ("risk factors") and 303 ("management's discussion and analysis of financial condition and results of operations") for the same reasons it violated Item 103 and ASC 450.  CAC ¶¶ 323-328.  These arguments also fail.

Neither Item 105 nor 303 imposes a disclosure duty supporting a Rule 10b-5 claim.  *See Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000) (Item 303 does not "create an independent cause of action for private plaintiffs").  Nor does either provision require disclosure of legal proceedings or regulatory-enforcement actions—those are covered by Item 103.  *See In re SeaChange Int'l, Inc.*, 2004 WL 240317, at *10 (D. Mass. Feb. 6, 2004) ("Item 103 marks the extent of a registrant's obligation to disclose information pertaining to pending litigation.").  Plaintiffs' Item 105 and 303 claims fail for the same reasons as their Item 103 claims.

In any event, Walmart satisfied Items 105 and 303.  Item 105 requires companies to identify (under the caption "Risk Factors") material factors that make an investment "speculative or risky."  17 C.F.R. § 229.105(a).  Plaintiffs' own allegations show that Walmart did just that.  For example, in 2016 and 2017, Walmart disclosed that it faced "risks associated with the legislative, judicial,

accounting, regulatory, political risks and conditions . . . which could materially adversely affect our business or financial performance," and that its "retail pharmacy operations are subject to numerous risks."  CAC ¶¶ 333, 336.  Plaintiffs note that neither disclosure explicitly identified controlled substances.  *Id*. ¶ 335.  But a disclosure is not misleading "simply because it does not disclose, at the level of detail the plaintiffs request in retrospect, all of the factors that contribute to the risk assessment." *See Hill v. Gozani*, 638 F.3d 40, 60 (1st Cir. 2011); *see also Oran*, 226 F.3d at 285 (a "simple (and accurate) factual assertion" cannot "constitute a material misrepresentation or omission").

After Walmart became involved in the MDL, it updated its "Risk Factors" and identified specific risks related to the dispensing and distribution of controlled substances.  CAC ¶ 339.  In particular, the Company informed investors that its "pharmacy operations in the United States are subject to numerous federal, state and local regulations" related to the "dispensing and sale of controlled substances"—and that "noncompliance with applicable laws and regulations could result in the imposition of *civil and criminal penalties* that could adversely affect" its business. *Id*. ¶ 339 (emphasis added).  Plaintiffs claim these statements misleadingly omitted that Walmart had already violated the CSA and was the subject of criminal and civil investigations.  *Id*. ¶ 341.  But Walmart has never been found to have violated the CSA, and thus did not have to make such a disclosure.  Nor did Walmart claim it

had complied with the CSA.  Instead, it warned that *noncompliance* could lead to substantial penalties (CAC ¶ 339)—and noted it was subject to lawsuits and investigations on that issue.  *See id*. ¶¶ 303, 339.  Walmart thus did not "create an impression of a state of affairs that differs in a material way from the one that actually exists."  *See Ferris v. Wynn Resorts Ltd.*, 462 F. Supp. 3d 1101, 1125 (D. Nev. 2020) (regulatory risk-disclosures not misleading where it did not "affirmatively intimate that Defendant Wynn had never been accused of sexual misconduct").

The Company also satisfied Item 303.  That section requires companies to disclose "any *known* trends" "or uncertainties that will result in or that are *reasonably likely*" to have a material impact on liquidity, net sales, revenues, or income from continuing operations.  17 C.F.R. § 229.303(a)(1) (emphasis added). An investigation is not a "known trend" or "uncertainty" under Item 303.  *Lions Gate*, 165 F. Supp. 3d at 20.  And when the DOJ Investigation progressed to a stage at which it was possible to form a belief that it *could* have a material impact on the business, Walmart disclosed the investigation—and has continued to update the disclosure.  *Supra*, Sections III.A.1-2; *see also Gaer v. Educ. Mgmt. Corp*., 2011 WL 7277447, at *68 (W.D. Pa. Aug. 30, 2011) ("Plaintiffs have not demonstrated that Item 303 required [defendant] to reveal hypothetical results of a negotiated rulemaking process that had barely begun[.]"); *Axar Master Fund, Ltd. v. Bedford*,

21

308 F. Supp. 3d 743, 758 (S.D.N.Y. 2018) ("Plaintiffs fail sufficiently to allege that defendants thought it was 'reasonably possible' or 'reasonably likely' that Republic would be found in breach of its code share agreements."); *Howard*, 395 F. Supp. 3d at 568 (allegedly improper sales "were not a 'trend or uncertainty' known to management").

### 4.   "Inherently Aspirational" Statements and "Puffery" in Walmart's Code of Ethics and Press Release Are Not Actionable

Plaintiffs next challenge statements in (i) Walmart's Code of Ethics, and (ii) an October 2017 press release about the opioid epidemic.  *See* CAC ¶¶ 329-330, 346-350.  These statements are not actionable.

As to the Code, Plaintiffs assert that Walmart "unqualifiedly represented" that it "complied with all laws."  CAC ¶ 348.  Walmart never made such a representation. On the page Plaintiffs quote, Walmart stated that it expects employees to be "honest, fair, and objective.  We speak up about concerns and comply with all laws and our policies."  Ex. 12.  These are "mission statements," not "guarantees."  *Howard*, 395 F. Supp. 3d at 547.  Indeed, Plaintiffs' argument "has been soundly rejected by those courts that have considered it."  *Horizon Lines*, 686 F. Supp. 2d at 415.  That is because codes of conduct are "inherently aspirational"—they express "opinions as to what actions are preferable, as opposed to implying that all staff, directors, and officers always adhere to its aspirations."  *Retail Wholesale & Dep't Store Union*

*Local 338 Ret. Fund v. Hewlett-Packard Co*., 845 F.3d 1268, 1276 (9th Cir. 2017); *see also Horizon Lines*, 686 F. Supp. 2d at 415 ("Were we to accept plaintiffs' position, any company with a code of ethics . . . would be required to disclose all violations of that code or face liability under federal securities law.  Such a result is untenable.").

As to the October 26, 2017 press release, Walmart stated that it stood "ready to work with our nation's leaders on a solution to combat prescription drug addiction and misuse," and had "taken steps to address" the abuse of prescription medications. *See* CAC ¶¶ 329-330.  This is not actionable for two reasons.

First, Plaintiffs have alleged no facts suggesting Walmart's statements were false.  Plaintiffs fail to allege, for example, that the Company was *not* ready to combat prescription medication misuse—just the opposite, Plaintiffs say that McMillon was "serious" about combatting opioid abuse and sought to do so.  *See, e.g.*, CAC ¶ 356.  Plaintiffs also challenge the press release's comment that Walmart had policies and training to support its pharmacists—claiming that Walmart did *not* "comprehensively train its pharmacists."  *See id*. ¶¶ 329-330.  But Plaintiffs' own allegations show that pharmacists *did* receive training "on how to handle prescriptions raising red flags."  *Id*. ¶¶ 98-99; 330.[7]

---

[7] Plaintiffs also assert that the Company did not have a "suspicious order monitoring" training program.  CAC ¶ 330.  This is untrue but also irrelevant.  The challenged

23

In any event, the press-release statements "are not material, but instead constitute inactionable puffery." *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 487 (D. Del. 2019).   Indeed, courts have dismissed claims challenging similar statements.   *See id.* ("robust compliance driven culture," a "very, very strong compliance culture," and a "demonstrated compliance infrastructure" were non-actionable puffery); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (commitment to "serving safe, high quality food to [its] customers" was puffery).

### 5.      The SOX Certifications Are Not Actionable

Finally, Plaintiffs challenge McMillon's and Biggs' SOX Certifications.  *See* CAC ¶¶ 342-343, 345.  Because these certifications "concern the conclusions" of McMillon and Biggs, they are opinions.  *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24-25 (S.D.N.Y. Sept. 9, 2019); *see also, e.g.*, *Lewis v. YRC Worldwide Inc.*, 2020 WL 1493915, at *16 (N.D.N.Y. Mar. 27, 2020) ("SOX certifications are statements of opinion.").  As a result, to establish falsity, Plaintiffs "must do more than simply allege that the conclusions were wrong." *AmTrust*, 2019 WL 4257110, at *25.  Instead, they must identify specific facts suggesting that at the time of certification, McMillon and Biggs had reached a different conclusion than

---

press release pertained to controlled-substance *dispensing*, while "suspicious-order monitoring" policies pertain to *distribution*.  *See* CAC Ex. A at 116 & ¶ 608.

the one stated—or reached no conclusion at all.  *See id.*; *see also Omnicare*, 575 U.S. at 189.  Plaintiffs fail to do so—in fact, the CAC does not contain any particularized facts about either executive's state of mind, let alone his knowledge of the allegedly omitted facts.  *See infra*, Section III.B.

### B.   <u>Plaintiffs Do Not Allege a Strong Inference of Scienter</u>

The CAC must also be dismissed because it fails to plead particularized facts giving rise to a strong inference of scienter.  *See* 15 U.S.C. § 78u-4(b)(2).  The PSLRA's "requirement for pleading scienter . . . marks a sharp break with Rule 9(b)."  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  To survive a motion to dismiss, Plaintiffs must allege "strong circumstantial evidence" that Defendants knew or recklessly disregarded the false or misleading nature of the statement at issue.  *Id.* at 276.  A "reckless" statement involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004); *see also In re Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004).

Plaintiffs also "may not make general allegations of scienter against a collective group of defendants; they must 'specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions.'"

*Horizon Lines*, 686 F. Supp. 2d at 420-21.  Plaintiffs' CAC must be dismissed because it "alleges absolutely no corroborative facts—let alone 'strong circumstantial evidence'"—supporting a strong inference of scienter as to any Defendant. *In re Elecs. For Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *8 (D.N.J. Jan. 31, 2019).

### 1.    Plaintiffs Do Not Establish a Strong Inference of Scienter as to the Individual Defendants

The CAC "fails to cite a single document or witness that corroborates" Plaintiffs' conclusory assertion that Defendants possessed scienter.  *Sapir v. Averback*, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016).  In fact, although the CAC runs to 147 pages, it barely mentions Individual Defendants McMillon, Biggs, and Chojnowski.  *See Israeli v. Team Telecom Int'l, Ltd.*, 2006 WL 2883237, at *5 (D.N.J. Oct. 10, 2006) ("each individual's participation and scienter must be pled separately and with particularity").  Allegations like the CAC's few generic assertions about these Defendants have repeatedly been rejected as insufficient to establish a strong inference of scienter.  *See, e.g.*, *Tellabs*, 551 U.S. at 326 ("omissions and ambiguities count against inferring scienter" under the PSLRA's particularity requirements).

**Day-to-Day Involvement and Positions at the Company.**  Plaintiffs first assert that the Individual Defendants must have acted with scienter because they "directly participated in the management of the Company" and its "day-to-day

26

operations." CAC ¶ 43. But "management's general awareness of the day-to-day workings of the company's business does not establish scienter" absent "some additional allegations of specific information conveyed to management and related to fraud." *Rahman*, 736 F.3d at 246-47 (citation omitted); *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc*., 720 F. Supp. 2d 517, 556 (D.N.J. 2010) (allegations that defendants "were high-ranking executives" are consistently "rejected as a basis for an inference of scienter"). Similarly, Plaintiffs' assertion that Defendants "knew the adverse non-public information about Walmart's misstatement[s]" because of their "senior positions" is not enough. CAC ¶ 398. A "plaintiff cannot establish scienter . . . by loosely describing the managerial hierarchy by which fraudulent conduct could have come to their attention." *Horizon Lines*, 686 F. Supp. 2d at 422; *see also Oran*, 226 F.3d at 290 ("[g]eneralized imputations of knowledge . . . do not suffice regardless of the defendant's position within the company").

**Access to Confidential Information.** The same is true for Plaintiffs' assertion that the Individual Defendants were "privy to confidential proprietary information" and served on a risk committee. CAC ¶¶ 43, 359. "[G]eneralized claims that each individual defendant . . . 'was privy to confidential proprietary information concerning the Company' are not sufficient to give rise to a strong inference that he acted with the required state of mind." *Israeli*, 2006 WL 2883237,

at *5.   Indeed, the CAC says nothing about *what* information the Individual Defendants were privy to, *when* they received it, *how* it rendered the Challenged Statements false or misleading, or *why* service on a risk committee even relates to the Challenged Statements.  *See, e.g.*, *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *16-18 (W.D. Pa. Sept. 8, 2017) (allegations that executives had "access to relevant product information" and attended meetings cannot establish scienter); *In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *19 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) ("conclusory allegations" that defendants "had access to detailed information regarding the segments and lines of business" do not "meet the particularity and strong inference requirements under the PSLRA").

**Other Scattershot Assertions.**   Plaintiffs offer other scattershot scienter assertions—including (1) the summary-judgment opinion and alleged failure to produce certain documents in the MDL, (2) statements made in a state lawsuit, (3) the hiring of Rachel Brand, and (4) Walmart's membership in the National Association of Chain Drug Stores.  *See* CAC ¶¶ 358-367.  All suffer from a common flaw:  they are entirely unconnected to the Individual Defendants, and do not suggest that those Defendants knew (or recklessly disregarded) that the Challenged Statements were false when made.  *See Klein v. Autek*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing allegations that lacked "corroborating factual support explaining how and why the Defendants knew the statements to be false");

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1260-64 (C.D. Cal. 2015) (rejecting allegations that defendants had a "pattern" of bad behavior).

**Motive to Drive Sales.**  Plaintiffs also argue that Defendants had a "motive to drive sales by attracting customers to Walmart who filled" opioid prescriptions. CAC ¶ 363.  But "[c]orporate officers always have an incentive to improve the lot of their companies"—"this is not, absent unusual circumstances, a motive to commit fraud." *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 68 (D. Del. Nov. 4, 2020) (citing *Avaya*, 564 F.3d at 278).  To support scienter, Plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from this fraud." *Id*.  Plaintiffs do not allege any "concrete and personal benefit" to any Individual Defendant.  On the contrary, the fact that Plaintiffs do not allege that any Defendant sold Walmart shares during the Class Period *cuts against* an inference of scienter.  *See NAHC*, 2001 WL 1241007, at *18 (that "several of the named individual defendants had not sold their company stock during the relevant time frame" undermined an inference of scienter); *Eckert v. Paypal Holdings, Inc.*, 831 F. App'x 366, 367 (9th Cir. 2020) (lack of scienter "underscored" by absence of allegations that "any defendant sold stock during the relevant time period").

**McMillon's Alleged Comment to a Friend and Input on DOJ Presentation.**  The CAC contains only two allegations referencing any Individual Defendant.  Both pertain to McMillon, and neither supports scienter.  Plaintiffs first

29

assert that in 2016, McMillon "bumped into a friend" who had lost his son to opioid misuse.  CAC ¶ 61.  According to Plaintiffs, McMillon emailed his friend's "suggestions" to others at Walmart.  *Id.* ¶¶ 204-205.  But Plaintiffs do not plead any facts about how forwarding a friend's suggestions made McMillon aware of "information contradicting [his] public statements."  *See Baseball League*, 720 F. Supp. 2d at 553; *see also Rahman*, 736 F.3d at 242 (plaintiffs must plead facts demonstrating defendants had a "mental state embracing intent to deceive, manipulate, or defraud").  Plaintiffs do not even explain what the "suggestions" were.

Plaintiffs also assert that McMillon allegedly "provided input into and was required to approve" Walmart's July 26, 2018 DOJ presentation.  *See* CAC ¶¶ 61, 357.  This, too, does not support a strong inference of scienter.  Plaintiffs say nothing about *what* that presentation included, let alone *how* it shows that McMillon made any statement with scienter.  *See In re Anadigics, Inc. Sec. Litig.*, 2011 WL 4594845, at *34 (D.N.J. Sept. 30, 2011) (no scienter where plaintiffs' allegations "say[] nothing about what [defendant] might have learned" during tour of the company's warehouses).  That Walmart continually told DOJ it *complied with* controlled-substance laws undermines any suggestion that the referenced presentation admitted *the opposite*.

30

### 2.     Plaintiffs Do Not Establish a Strong Inference of Scienter as to Walmart

Plaintiffs also fail to allege a strong inference of Walmart's scienter.  To determine whether a corporation has scienter, the Court must look "to the state of mind of the individual corporate official or officials who make or issue the statement"—*i.e.*, McMillon, Biggs, and Chojnowski.  *See City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676 (3d Cir. 2011); *see also* 17 C.F.R. § 240.10b-5 (only a person who "make[s] any untrue statement" is liable under Section 10(b) and Rule 10b-5).  Because Plaintiffs have not pled "the requisite level of scienter with respect to at least one of the Individual Defendants," their allegations against Walmart also fail.  *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *3 (C.D. Cal. Nov. 1, 2012); *Horizon Lines*, 442 Fed. App'x at 676 (affirming dismissal where there was no individual who made statements with scienter).

Plaintiffs perhaps seek to plead scienter against Walmart "without raising the same inferences required to attribute scienter to an individual defendant." *Rahman*, 736 F.3d at 246.  The Third Circuit has neither accepted nor rejected this approach, but courts within the Third Circuit have routinely rejected this theory as improper "group pleading."  *See Horizon Lines*, 713 F. Supp. 2d at 403 (D. Del. 2010) (rejecting "collective-scienter" theory); *Howard*, 395 F. Supp. 3d at 565 (same). Even if this theory were viable, however, Plaintiffs have failed to allege the type of

31

"dramatic" facts permitting an inference that corporate officers knew the Challenged Statements were false. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) (giving an example of "dramatic" facts that might permit such an inference: "Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero.").

### C.    Plaintiffs Do Not Allege Loss Causation

Plaintiffs point to two disclosures that they claim revealed the relevant "truth" about the alleged misstatements:  the *ProPublica* Article and the DOJ Complaint. CAC ¶¶ 368-374.  Neither is "corrective" for loss-causation purposes.

Plaintiffs first assert that *ProPublica* disclosed "for the first time" that "DOJ had been criminally investigating Walmart for violating the CSA and related laws . . . since 2016." *Id*. ¶ 351.  That is wrong.  Rather, Walmart told investors nearly two years earlier that governmental entities were investigating its controlled-substance dispensing practices.  *Id*. ¶ 303.  Walmart also stated that it could "provide no assurance as to the scope and outcome" of the investigations, "no assurance as to whether its business, financial condition or results of operations will not be materially adversely affected," and that it could face "significant criminal" penalties. *Id*. ¶¶ 303, 339.  That the article contained the EDTX's one-sided view of the investigation is not "corrective" for loss-causation purposes.  On the contrary, the article reported nothing other than the possibility of a criminal proceeding that never

32

happened.  "To be sure, stock prices may fall upon the announcement of an . . . investigation, but that is because the investigation can be seen to portend an added risk of future corrective action.  That does not mean that the investigations, in and of themselves, reveal to the market that the company's previous statements were false or fraudulent."  *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013) .

The same is true for Plaintiffs' second alleged corrective disclosure.  Plaintiffs assert that on December 22, 2020, DOJ announced "that it had filed a lawsuit against Walmart for alleged violation of the Controlled Substances Act."  CAC ¶ 372.  Walmart disclosed the possibility of this lawsuit at least *two months earlier*.  Ex. 11 (*Walmart Inc. v. U.S. Dep't of Justice et al.*, Case No. 4:20-cv-00817-SDJ (E.D. Tex. Oct. 22, 2020)).  The DOJ Complaint thus was "not a release of information that reveal[ed] to the market the pertinent truth that was previously concealed or obscured by the company's [alleged] fraud."  *Uniti*, 499 F. Supp. 3d at 70; *see also In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 270 (3d Cir. 2005) (article was not a corrective disclosure where the facts were already known to the market).

## IV.   CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: October 8, 2021

Of Counsel:


Sean M. Berkowitz
Nicholas J. Siciliano
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611.
Tel.: +1.312.876.7700
Fax: +1.312.993.9767
Email: sean.berkowitz@lw.com
Email: nicholas.siciliano@lw.com

*Counsel for Defendants*

Respectfully submitted,

RICHARDS, LAYTON &
FINGER, P.A.


 */s/ Robert W. Whetzel*
Robert W. Whetzel (#2288)
Raymond J. DiCamillo (#3188)
920 North King Street
Wilmington, Delaware 19801
Tel.:  +1.302.651.7700
Fax:  +1.302.651.7701
Email: whetzel@rlf.com
Email: dicamillo@rlf.com

*Counsel for Defendants*

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's September 24, 2021 Order Regarding Response to Amended Class Action Complaint for Violations of the Federal Securities Laws.  The text of this brief, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 7,959 words, excluding the case caption and cover page, table of contents, table of authorities, glossary of defined terms, exhibits, and any request that the Court consider such exhibits.

Dated: October 8, 2021                    */s/ Robert W. Whetzel*
                                          Robert W. Whetzel (#2288)