# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re Walmart Inc. Securities Litigation* | ) ) ) ) ) ) ) | **Case No. 1:21-cv-0055-CFC (Consolidated)** <br><br> **CLASS ACTION** |

## OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW

Dated: November 16, 2022

Of Counsel:

Sean M. Berkowitz
Nicholas J. Siciliano
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel.: +1.312.876.7700
Fax: +1.312.993.9767
Email: sean.berkowitz@lw.com
Email: nicholas.siciliano@lw.com

*Counsel for Defendants*

Robert W. Whetzel (#2288)
Raymond J. DiCamillo (#3188)
RICHARDS, LAYTON &
FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
Tel.:  +1.302.651.7700
Fax:  +1.302.651.7701
Email: whetzel@rlf.com
Email: dicamillo@rlf.com

*Counsel for Defendants*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................1

II.   FACTUAL BACKGROUND..................................................................3

    A.    Walmart and the Individual Defendants ...............................3

    B.    Walmart's Pharmacy Operations ...........................................3

    C.    Walmart Discloses Opioid-Related Litigation and
        Investigations.........................................................................4

    D.    *ProPublica* Publishes an Article About the Investigation, and
        Walmart's Stock Price Quickly Rebounds.............................5

    E.    Walmart Sues DOJ and DEA, and DOJ Sues Walmart ........6

    F.    After the Hearing on Defendants' Motion to Dismiss, Plaintiffs
        Amend Their Complaint—but Add No Particularized Facts...............7

III.  ARGUMENT........................................................................................7

    A.    Plaintiffs Do Not Allege an Actionable Misstatement or
        Omission.................................................................................9

        1.    Walmart Did Not Violate ASC 450........................................10

            a.    Walmart Complied with ASC 450 ................................10

                (1)    Walmart Did Not Have to Disclose the
                        Investigation Before June 2018............................10

                (2)    Walmart's Disclosure Complied with ASC
                        450 .......................................................................13

            b.    Plaintiffs' Disagreement with Walmart's
                Accounting Judgment Is Not Actionable ......................15

        2.    Walmart Did Not Violate Item 103 ........................................16

         3.    Walmart Did Not Violate Item 105 ........................................19

         4.    The Press Release Is Not False or Actionable ........................22

         5.    The SOX Certifications Are Not Actionable...........................23

    B.    Plaintiffs Do Not Allege a Strong Inference of Scienter ...................24

1.    Plaintiffs Do Not Establish a Strong Inference of Scienter
      as to the Individual Defendants...................................................25

2.    Plaintiffs Do Not Establish a Strong Inference of Scienter
      as to Walmart ............................................................................31

C.    Plaintiffs Do Not Allege Loss Causation ............................................32

IV.  CONCLUSION.................................................................................33

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013) ...................................................................8

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
   137 S. Ct. 2042 (2017)...........................................................................12

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004) ...............................................................7, 9

*Cheng v. Activision Blizzard, Inc.*,
   2022 WL 2101919 (C.D. Cal. Apr. 18, 2022) ......................................19

*Cheung v. Keyuan Petrochemicals, Inc.*,
   2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ........................................32

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) .................................................................12

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   442 F. App'x 672 (3d Cir. 2011) .................................................... 31, 32

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009)..................................................7, 25

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   713 F. Supp. 2d 378 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011) ...29

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   928 F. Supp. 2d 705 (S.D.N.Y. 2013) ..................................................11

*Gold v. Ford Motor Co.*,
   577 F. App'x 120 (3d Cir. 2014) ............................................................8

*GSC Partners CDO Fund v. Washington*,
   368 F.3d 228 (3d Cir. 2004) .................................................................24

*Gutman v. Lizhi Inc.*,
   2022 WL 4646471 (E.D.N.Y. Oct. 1, 2022) ........................................20

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019)...................................................................12

*Hutchison v. Deutsche Bank Sec. Inc.*,
   647 F.3d 479 (2d Cir. 2011) ................................................................................20

*In re 2U, Inc. Sec. Class Action*,
   2021 WL 3418841 (D. Md. Aug. 5, 2021) ...........................................................20

*In re Aceto Corp. Sec. Litig.*,
   2019 WL 3606745 (E.D.N.Y. Aug. 6, 2019) .......................................................15

*In re Aetna, Inc. Sec. Litig.*,
   617 F.3d 272 (3d Cir. 2010) ..............................................................................8, 9

*In re AmTrust Fin. Servs., Inc. Sec. Litig.*,
   2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ............................................... 23, 24

*In re Anadigics, Inc. Sec. Litig.*,
   2011 WL 4594845 (D.N.J. Sept. 30, 2011) ........................................................29

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013),
   *aff'd*, 566 F. App'x 93 (2d Cir. 2014)...................................................... 11, 14, 15

*In re Campbell Soup Co. Sec. Litig.*,
   2022 WL 6961796 (D.N.J. Oct. 11, 2022) .................................................... 26, 30

*In re Chemours Co. Sec. Litig.*,
   587 F. Supp. 3d 143 (D. Del. 2022)............................................................. 16, 32

*In re Elecs. For Imaging, Inc. Sec. Litig.*,
   2019 WL 397981 (D.N.J. Jan. 31, 2019)............................................................25

*In re Galena Biopharma, Inc. Sec. Litig.*,
   2019 WL 5957859 (D.N.J. Nov. 12, 2019) ................................................... 17, 19

*In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*,
   103 F. App'x 465 (3d Cir. 2004) .......................................................................16

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
   2017 WL 1536223 (D.N.J. Apr. 27, 2017),
   *aff'd*, 905 F.3d 106 (3d Cir. 2018)....................................................... 15, 16, 28

*In re Intelligroup Sec. Litig.*,
   468 F. Supp. 2d 670 (D.N.J. 2006) ........................................................9

*In re Lions Gate Ent. Corp. Sec. Litig.*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ...................................... 11, 15, 17

*In re Merck & Co. Sec. Litig.*,
   432 F.3d 261 (3d Cir. 2005) ...............................................................33

*In re NAHC, Inc. Sec. Litig.*,
   2001 WL 1241007 (E.D. Pa. Oct. 17, 2001),
   *aff'd*, 306 F.3d 1314 (3d Cir. 2002) ........................................... 27, 31

*In re Newell Brands, Inc. Sec. Litig.*,
   2019 WL 6715055 (D.N.J. Dec. 10, 2019),
   *aff'd*, 837 F. App'x 869 (3d Cir. 2020) ...........................................20

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ...............................................................33

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   311 F.3d 198 (3d Cir. 2002) .................................................................7

*In re SeaChange Int'l, Inc.*,
   2004 WL 240317 (D. Mass. Feb. 6, 2004) ........................................20

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ......................................................... 24, 31

*Israeli v. Team Telecom Int'l, Ltd.*,
   2006 WL 2883237 (D.N.J. Oct. 10, 2006) ........................................27

*Jaroslawicz v. M&T Bank Corp.*,
   962 F.3d 701 (3d Cir. 2020) ...............................................................20

*JPMorgan Chase & Co. v. Comm'r of Internal Revenue*,
   458 F.3d 564 (7th Cir. 2006) .............................................................15

*Jun v. 500.com Ltd.*,
   2021 WL 4813192 (E.D.N.Y. Aug. 13, 2021) ...................................21

*Klein v. Autek Corp.*,
   147 F. App'x 270 (3d Cir. 2005) ........................................................30

*Laasko v. Endo Int'l, PLC*,
    2022 WL 3444038 (D.N.J. Aug. 17, 2022) .................................................. 26, 27

*Lomingkit v. Apollo Educ. Grp. Inc*.,
    2017 WL 633148 (D. Ariz. Feb. 16, 2017) ......................................................23

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp*.,
    363 F. Supp. 3d 476 (D. Del. 2019)..................................................................23

*Martin v. GNC Holdings, Inc.*,
    2017 WL 3974002 (W.D. Pa. Sept. 8, 2017)....................................................33

*N. Sound Cap. LLC v. Merck & Co.*,
    702 F. App'x 75 (3d Cir. 2017) ........................................................................12

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
    720 F. Supp. 2d 517 (D.N.J. 2010)..................................................................28

*Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)..........................................................................................16

*Ong v. Chipotle Mexican Grill, Inc*.,
    294 F. Supp. 3d 199 (S.D.N.Y. 2018) ..............................................................23

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) .............................................................................15

*Rahman v. Kid Brands, Inc*.,
    736 F.3d 237 (3d Cir. 2013) .............................................................. 8, 9, 27, 28

*Salim v. Mobile Telesystems PJSC*,
    2021 WL 796088 (E.D.N.Y. Mar. 1, 2021)......................................................18

*Sapir v. Averback*,
    2016 WL 554581 (D.N.J. Feb. 10, 2016) ..........................................................25

*Se. Pa.. Transp. Auth. v. Orrstown Fin. Servs., Inc*.,
    2022 WL 3572474 (M.D. Pa. Aug. 18, 2022)........................................... 23, 26

*SLF Holdings, LLC v. Uniti Fiber Holdings, Inc*.,
    499 F. Supp. 3d 49 (D. Del. 2020),
    *aff'd*, 2022 WL 3442353 (3d Cir. Aug. 17, 2022)........................... 22, 31, 32, 33

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)....................................................................................7, 25

*United States v. Crop Growers Corp.*,
   954 F. Supp. 335 (D.D.C. 1997).........................................................17

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019),
   *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021) ............................12

*Walmart Inc. v. U.S. Dep't of Justice*,
   No. 4:20-cv-00817 (E.D. Tex. Oct. 22, 2020).......................................6

*Williams v. Globus Med., Inc.*,
   869 F.3d 235 (3d Cir. 2017) ....................................................... 21, 22

*Winer Family Tr. v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ...............................................................29

## STATUTES

15 U.S.C. § 78u–4(b)(1) ...............................................................................8

15 U.S.C. § 78u-4(b)(2) ..............................................................................24

## RULES

Fed. R. Civ. P. 9(b) .....................................................................................7

## REGULATIONS

17 C.F.R. § 229.103 ...................................................................................20

17 C.F.R. § 229.105(a)...............................................................................24

# GLOSSARY OF TERMS

The following terms are used in this brief:

| | |
|---|---|
| 2011 MOA or MOA: | Administrative Memorandum of Agreement between the United States Department of Justice, Drug Enforcement Administration, and Wal-Mart Stores, Inc., dated March 17, 2011, attached to the SAC as Exhibit A |
| AUSA: | Assistant United States Attorney |
| Board: | Walmart Inc.'s Board of Directors |
| CAC: | Amended Class Action Complaint for Violations of the Federal Securities Laws, filed July 12, 2021, Dkt. 29 |
| CEO: | Chief Executive Officer |
| CFO: | Chief Financial Officer |
| Challenged Statements: | Statements challenged as false or misleading in violation of Section 10(b) of the Securities Exchange Act in the Second Amended Class Action Complaint, as detailed in paragraphs 289-335 |
| Class Period: | March 31, 2017 through December 22, 2020, inclusive |
| Company: | Walmart Inc. |
| Complaint or SAC: | Second Amended Class Action Complaint for Violations of the Federal Securities Laws, filed October 14, 2022, Dkt. 65 |
| Controlled Substances Act, or CSA: | The U.S. Comprehensive Drug Abuse Prevention and Control Act of 1970, 1970 U.S.C.C.A.N. 4566, 4571-72 |
| DEA: | U.S. Drug Enforcement Administration |
| Declaration: | Declaration of Raymond J. DiCamillo, dated November 16, 2022 |
| Defendants: | Walmart Inc., C. Douglas McMillon, and M. Brett Biggs |
| DOJ: | U.S. Department of Justice |
| DOJ Complaint: | Initial complaint filed in *United States v. Walmart Inc. and Wal-Mart Stores East, LP*, 1:99-mc-09999 (D. Del.), dated December 22, 2020, attached to the SAC as Exhibit B |

| | |
|---|---|
| EDTX: | The Eastern District of Texas |
| Form 10-K or 10-K: | Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, filed with the SEC on Form 10-K |
| Form 10-Q or 10-Q: | Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934, filed with the SEC on Form 10-Q |
| GAAP: | Generally Accepted Accounting Principles |
| Individual Defendants: | C. Douglas McMillon and M. Brett Biggs |
| Investigation or DOJ Investigation: | U.S. Department of Justice investigation related to Walmart Inc.'s nationwide controlled substance dispensing practices involving the sale of opioids |
| MDL: | Multidistrict litigation pending in the United States District Court for the Northern District of Ohio, captioned *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2805 (N.D. Ohio) |
| Plaintiffs: | Kim Kengle, as trustee of the Kim K. Kengle 2000 Trust, and Roseanne Lacy |
| POM: | Pharmacy Operating Manual |
| *ProPublica* Article: | Article published on www.propublica.org on March 25, 2020, entitled "Walmart Was Almost Charged Criminally Over Opioids. Trump Appointees Killed the Indictment," attached to the Declaration of Raymond J. DiCamillo as Exhibit 11 |
| PSLRA: | The Private Securities Litigation Reform Act of 1995 |
| PSW: | Portfolio Scoring Worksheet referenced in paragraphs 149-150 of the SAC, attached to the SAC as Exhibit J |
| SAC or Complaint: | Second Amended Class Action Complaint for Violations of the Federal Securities Laws, filed October 14, 2022, Dkt. 65 |
| SEC: | U.S. Securities and Exchange Commission |
| SOM Program: | Suspicious Order Monitoring Program |
| SOX: | The Sarbanes-Oxley Act of 2002 |

| Transcript or Tr.: | Transcript from September 10, 2022 hearing on Defendants' Motion to Dismiss the CAC, attached to the Declaration of Raymond J. DiCamillo as Exhibit 8 |
| --- | --- |
| Walmart: | Walmart Inc. |

## I.   INTRODUCTION

The SAC does not fix the deficiencies in Plaintiffs' securities-fraud case, including those the Court identified two months ago—it exacerbates them.  At the hearing, the Court observed that Plaintiffs' prior complaint was a "smorgasbord of allegations" that did not "bear on the real question about whether there's securities fraud." Tr. 14.  In response, Plaintiffs added *no particularized facts* supporting their falsity, scienter, or loss-causation claims.  On the contrary, the "new" allegations underscore why this lawsuit should be dismissed with prejudice:

- The Court noted there were "many irrelevancies" in the CAC.  Tr. 8.  For example, Plaintiffs did not identify an alleged false statement until page 96 of 147.  Tr. 50.  The SAC is worse.  It does not identify an alleged misstatement until *page 106* of a now-*160-page* complaint.  And those extra pages are not "carefully crafted," as the Court instructed.  *Id.* at 9.  Just the opposite—Plaintiffs litter the SAC with more passages from the outdated DOJ Complaint and portions of MDL proceedings that occurred *after* the Class Period.

- The Court denied as irrelevant Plaintiffs' request to judicially notice an MDL verdict (from November 2021) and abatement order (from August 2022). Tr. 83.  In fact, the Court said it was a "joke" Plaintiffs "would seek judicial notice of those two items" (*id.* at 9), as they were "just trying to smear the defendant" (*id.* at 13).  Disregarding the Court's guidance, Plaintiffs not only attach the verdict and order to the SAC, they contend these documents show McMillon and Biggs acted with scienter *during the Class Period*.  Of course, Plaintiffs point to nothing in these documents tying either Defendant to any wrongdoing at any time (much less in the Class Period).

- Although Plaintiffs conceded at the hearing that "all participants" knew DOJ "in Washington" (not an AUSA in EDTX) would decide whether to bring criminal charges against Walmart (Tr. 69), the SAC reverses course

and asserts without support that Walmart "improperly exploit[ed]" access to DOJ officials to secure a declination (SAC ¶¶ 301, 318).

- The Court questioned how an agreement (MOA) and document (PSW) predating the Class Period by several years could show scienter.  Tr. 53, 61.  Indeed, the Court told Plaintiffs to "really rethink" their reliance on the expired, unenforceable MOA.  *Id.* at 53.  Plaintiffs do not address this problem in the SAC—they double-down on it.  Plaintiffs still do not identify any particularized facts from the Class Period suggesting that McMillon or Biggs knew (or recklessly disregarded) their statements were false.

- Plaintiffs simply assert that McMillon and Biggs knew about the MOA and PSW and thus must have known Walmart was violating the CSA.  SAC ¶ 343.  But Plaintiffs' other allegations and exhibits refute this assertion.  For example, Plaintiffs now attach the PSW, but allege no facts showing who drafted or received it and instead cling to the document's remark that the SOM project was "Board informed."  In any event, the PSW predates the new Class Period by *three years*.  Most importantly, the PSW does not show that Walmart was violating the CSA.  On the contrary, Plaintiffs' own allegations and new exhibits describe the many initiatives Walmart undertook *to comply with the CSA*—the opposite of showing Defendants possessed scienter.

- At the hearing, Plaintiffs said their "best fact" showing McMillon's scienter was an MDL court's order holding that McMillon had knowledge of Walmart's opioid policies and the DOJ investigation, and their "second-best fact" was that McMillon bumped into a friend in 2016 and said Walmart would "throw money" at CSA-compliance policies.  Tr. 63-66.  Plaintiffs do not plead "better" facts in the SAC.  On the contrary, they continue to emphasize the same two, which fall far short of the heightened burden to show scienter.  The MDL order, for example, is from *2021*, and never says McMillon knew of CSA *violations*.  So too for the *2016* conversation, which, as the Court noted, suggests Walmart is "not going to be in violation" and there is no reasonable "possibility of a loss."  *Id.* at 66.

These defects only scratch the surface of the problems plaguing Plaintiffs' pleading.  And the minor changes Plaintiffs did make—shaving a year off the Class

Period, dropping a defendant they hardly mentioned (David Chojnowski), and withdrawing a few of the Challenged Statements—cannot save their deficient allegations.   In short, Plaintiffs cannot meet the PSLRA's exacting pleading requirements.  This case should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

### A.    Walmart and the Individual Defendants

Walmart is one of the largest retailers in the United States.  SAC ¶ 8. McMillon has held various positions at Walmart, serving as President and CEO since 2014.  *Id.* ¶ 38.  Biggs, Walmart's former CFO, served in that role beginning in January 2016 and through the Class Period.  *Id.* ¶ 39.

### B.    Walmart's Pharmacy Operations

Walmart's Health-and-Wellness unit represents less than 8% of the Company's sales.  Exs. 2 at 9, 83; 5 at 75-76.  Revenues from prescription medications comprise an even smaller portion of the business, from controlled substances a yet smaller portion, and from opioids a smaller portion still.  *E.g.*, Ex. 5 at 8; SAC, Ex. L at 3.

Walmart pharmacists fill prescriptions written by licensed prescribers.  SAC ¶ 68.  A fraction of those prescriptions are for opioid medications.  *Id.*, Ex. L at 3. Through a subsidiary, Walmart also distributed certain controlled substances to Walmart-operated pharmacies for a time before May 2018.  *Id.* ¶ 135.  Walmart has never manufactured or marketed controlled substances, nor has it distributed

controlled substances to any third-party pharmacy.

Walmart designed a system of controls for the self-distribution of controlled substances, including opioids. *Id.* ¶¶ 80-82. The Company also designed controls for controlled-substance dispensing. *Id.* ¶¶ 95-96.

### C. Walmart Discloses Opioid-Related Litigation and Investigations

Like other companies that have dispensed or distributed prescription opioid medications, Walmart has been the subject of lawsuits and investigations in recent years. Walmart was first named as a defendant in an opioid-related lawsuit in March 2017. Nine months later, that action was transferred to the MDL. SAC ¶¶ 52-53, 297. Walmart disclosed the MDL in its March 30, 2018 Form 10-K and updated the disclosure as the MDL progressed. *Id.* ¶¶ 297, 299, 302, 304, 306, 308. Walmart denies the allegations in the MDL.

The Company also has "been responding to subpoenas, information requests and investigations from governmental entities related to nationwide controlled substance dispensing practices involving the sale of opioids." *Id.* ¶ 299. Walmart disclosed those investigations beginning in June 2018, and as with the MDL, updated the disclosures throughout the Class Period. Exs. 3 at 16; 4 at 73; 5 at 23, 72. Walmart told investors that it "can provide no assurance as to the scope and outcome of these matters and no assurance as to whether its business, financial condition or results of operations will not be materially adversely affected." *Id.*

**D.** ***ProPublica* Publishes an Article About the Investigation, and Walmart's Stock Price Quickly Rebounds**

Two years after Walmart disclosed the MDL and opioid-related investigations, *ProPublica* published an article about one of the investigations. Among other things, the article asserted that certain DOJ attorneys in EDTX wanted to charge Walmart criminally in 2018, but ultimately did not after more senior officials considered the matter.  SAC ¶ 336; Ex. 11 at 2-4.

But the article glossed over what really happened.  Walmart maintained that EDTX lawyers threatened an unsupported criminal indictment to force an unjustified civil settlement—actions that violated DOJ's policies and ethics rules. *See* SAC Ex. L.  When Walmart sought fair consideration of the law and facts, DOJ assigned career prosecutors to review the matter, who declined to pursue criminal charges. SAC ¶¶ 236-237.

Walmart's stock price fell the day of the *ProPublica* Article, but quickly rebounded.  Just five days later, Walmart shares closed at $115.19—higher than the price before the article.  Ex. 10.  By mid-April 2020, Walmart shares traded 20% above the price on the day of the article. *Id.*  Walmart's stock price continued to rise over the next few months.  By mid-December 2020, Walmart traded around $145 (over 30% higher than the price on the day of the article and nearly 100% higher than the beginning of the Class Period). *Id.*

### E.      Walmart Sues DOJ and DEA, and DOJ Sues Walmart

On October 22, 2020, Walmart sued DOJ.  *See Walmart Inc. v. U.S. Dep't of Justice*, No. 4:20-cv-00817 (E.D. Tex. Oct. 22, 2020) (Ex. 7).  Walmart alleged that the government was interpreting the CSA improperly and trying to blame Walmart (and others) for the government's own failures, and sought a declaration that Walmart's pharmacists were not liable under the CSA for failing to second-guess licensed doctors' prescribing practices.  *Id*. at 52.  Walmart stated that the government "intend[ed] to pursue a civil enforcement action against Walmart" for alleged CSA violations.[1]  *Id.* ¶ 115.  Walmart's suit was eventually dismissed on jurisdictional grounds.

Two months later, DOJ filed a civil complaint, alleging that Walmart violated the CSA as a controlled-substances dispenser and distributor.  SAC Ex. B.  Walmart's share price fell slightly the day DOJ filed its lawsuit, from $145.97 to $144.20.  Ex. 10.  But again, the stock quickly recovered.  Two weeks later, Walmart shares eclipsed $146, higher than the price before the DOJ Complaint.  *Id.*  Plaintiffs' predecessors then filed this lawsuit, claiming erroneously that Defendants had failed to disclose the Investigation.

After the Supreme Court's decision earlier this year in *Ruan v. United States*,

---

[1] In a press release issued the same day, Walmart similarly stated DOJ was threatening a lawsuit.  *See* Ex. 6.

DOJ withdrew its original complaint and filed a new one on October 7, 2022. Walmart moved to dismiss most of the amended complaint on November 7, 2022.

> **F.  After the Hearing on Defendants' Motion to Dismiss, Plaintiffs Amend Their Complaint—but Add No Particularized Facts**

Last fall, Defendants moved to dismiss Plaintiffs' CAC.  Dkt. 38-42.  At the close of the hearing on Defendants' motion, the Court offered Plaintiffs a choice: stand on the CAC or "take a stab at trying to allege facts from which it could be plausibly inferred that, during the class period, there's been a showing of the requisite intent and actionable statements."  Tr. 80:1-9.  Plaintiffs chose the latter.

## III.  ARGUMENT

Despite the opportunity to amend their complaint to add particularized facts supporting their claims, Plaintiffs have failed to do so.  That failure is especially clear because Plaintiffs' claims are subject to the rigorous requirements of Rule 9(b) and the PSLRA.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 319 (2007).  Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This requires Plaintiffs to "specify 'the who, what, when, where, and how'" for each element of their claim.  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).  The PSLRA adds "another layer of factual particularity," *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002), and "imposes a dramatically higher standard" than traditional notice pleading, *City of Roseville*

*Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 414 (D. Del. 2009).

Under the PSLRA's "exacting" standard, the SAC should be dismissed for three reasons. *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 277-78 (3d Cir. 2010). First, Plaintiffs fail to plead a false or misleading statement. The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief," to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

Second, Plaintiffs fail to plead scienter. The PSLRA "enhances" Rule 9(b) and requires Plaintiffs to state with particularity facts giving rise to a strong inference of scienter—*i.e.*, that Defendants acted with an "intent to deceive, manipulate, or defraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013). Plaintiffs must allege facts that "constitute circumstantial evidence of either reckless or conscious [mis]behavior." *Gold v. Ford Motor Co.*, 577 F. App'x 120, 123 (3d Cir. 2014). Recklessness is an "extreme departure from the standards of ordinary care," and must "present[] a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493 (3d Cir. 2013). To qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent

intent." *Rahman*, 736 F.3d at 242.

Third, Plaintiffs fail to plead loss causation—that Defendants' alleged misrepresentation "concealed something from the market that, when disclosed, negatively affected the value of the security." *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 692 (D.N.J. 2006).

A complaint must be dismissed if it fails to plead *any* of these elements—the SAC's failure to plead all three requires its dismissal. *See Chubb*, 394 F.3d at 144-45 ("court shall" dismiss a complaint that fails to meet the "substantially heighten[ed]" requirements).

### A.    <u>Plaintiffs Do Not Allege an Actionable Misstatement or Omission</u>

Like the CAC, the SAC challenges all the Company's Class-Period Forms 10-K and 10-Q as false or misleading.  The crux of Plaintiffs' case is that Defendants violated GAAP (ASC 450) and SEC Regulation S-K (Items 103 and 105) by allegedly not disclosing the Investigation *soon enough*, and once Walmart disclosed it, not disclosing *enough* about it.  SAC ¶¶ 5-7.  Plaintiffs also continue to challenge Walmart's October 26, 2017 press release and McMillon's and Biggs's SOX Certifications.  *Id.* ¶¶ 28-29.  Plaintiffs have not, however, met their rigorous and "exacting" burden to plead material falsity with particularity, and the SAC should be dismissed with prejudice.  *See Aetna*, 617 F.3d at 277-78; *Rahman*, 736 F.3d at 240.

### 1.   Walmart Did Not Violate ASC 450

Plaintiffs assert that Defendants violated ASC 450 by "knowingly" failing to disclose the Investigation as a "loss contingency."  SAC ¶¶ 313-318.  Relatedly, Plaintiffs contend that Walmart's SEC filings misleadingly failed to disclose the Investigation as a legal proceeding "where a liability is reasonably possible and may be material." *Id.* ¶¶ 289-322.  This is just another way to say Walmart violated ASC 450—which calls for disclosure of material loss contingencies where there is "at least a reasonable possibility" a loss may have been incurred.  *See* ASC 450-20-25-2, 50-3.  However formulated, Plaintiffs' claims fail.

### a.   Walmart Complied with ASC 450

Plaintiffs claim that Walmart should have disclosed (1) the existence of the Investigation as a contingent liability *before* June 4, 2018, and (2) *more detail* about the Investigation *after* June 4, 2018.  SAC ¶¶ 313-318.  Neither claim has merit.

### (1)   Walmart Did Not Have to Disclose the Investigation Before June 2018

According to Plaintiffs, by the time Walmart filed its Form 10-K on March 31, 2017, Defendants "had received an email search warrant" from an EDTX AUSA and thus "were aware" a "material liability" was "reasonably possible" given Defendants' "awareness" of (1) the 2011 MOA; and (2) "Walmart's failure to comply with the 2011 MOA as evidenced by" the PSW.  SAC ¶ 291.  This argument fails on at least four levels.

First, the Investigation was not a material "contingent liability" before the June 2018 Form 10-Q because, as Plaintiffs concede, the EDTX prosecutors did not even meet with Walmart to discuss a potential criminal indictment until *April 2018*. SAC ¶¶ 213-215. ASC 450 states that a loss-contingency disclosure should be made "if there is at least a reasonable possibility" a loss "may have been incurred." ASC 450-50-3. Under Plaintiffs' own allegations, Walmart could not have known a loss "may have been incurred" until April 2018 at the earliest—after which Walmart promptly disclosed the Investigation in June. Before that time, the DOJ Investigation cannot have been a "pending or threatened litigation" that required disclosure under ASC 450. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 21-22 (S.D.N.Y. 2016); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 718 (S.D.N.Y. 2013) ("state investigations were not pending or threatened litigation"); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 583-84 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014) (investigations did not have to be disclosed under ASC 450).

Second, as to the MOA, it expired two years *before* the Class Period (SAC ¶ 155) and is thus irrelevant to whether Plaintiffs have alleged misstatements *during* the Class Period.[2]  *See* Tr. 53:1-3 ("But why is it relevant, the 2011 MOA that

---

[2] Any claim that the Company should have disclosed the MOA before the Class Period is barred by the five-year statute of repose. *Cal. Pub. Emps.' Ret. Sys. v. ANZ*

expired in 2015, if it's before the class period?").

Third, ASC 450 did not require Walmart to disclose it "had violated the 2011 MOA." SAC ¶ 288. Walmart has never been found to have violated the MOA, and regardless, "companies do not have a duty to disclose uncharged, unadjudicated wrongdoing." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014); *see also Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 572 (W.D. Pa. 2019) (same). Indeed, Plaintiffs' allegations hinge on unproven assertions in the (now amended) DOJ Complaint and MDL events that occurred *after* the Class Period. Plaintiffs "may not allege 'facts' simply because they appear in" documents from other court proceedings. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 811 (N.D. Cal. 2019), *aff'd*, 2021 WL 4281301 (9th Cir. Sept. 21, 2021); *see also* Tr. 12:20-13:2 (MDL orders could not "have any bearing and any relevance" in "assessing whether these statements are actionable").

Finally, the PSW cannot have shown a "failure to comply with the 2011 MOA" because it pertained to controlled-substance *distribution*, while the MOA pertained to *dispensing*. And even if the PSW related to the MOA, Plaintiffs' own allegations show the document did not reveal Defendants' "awareness" of MOA/CSA violations. It is unclear (and Plaintiffs do not allege with particularity)

---

*Sec., Inc.*, 137 S. Ct. 2042 (2017); *N. Sound Cap. LLC v. Merck & Co.*, 702 F. App'x 75, 79-80 (3d Cir. 2017).

*who* drafted the document, *who* received it, and *when* they sent it.  To be sure, Plaintiffs pounce on the PSW's remark that the SOM program was "Board informed," but neither Plaintiffs nor the PSW identify *when* the Board was informed, *which* Board members (or others) were informed, or *what* they learned.  In any event, the PSW was drafted in 2014, three years *before* the Class Period.  Plaintiffs' other allegations show that Walmart adopted many controlled-substance-compliance enhancements *after* the PSW, which refutes any suggestion that Defendants "knew" Walmart was violating the (expired) MOA in the Class Period.

For example, Plaintiffs attach a March 2014 presentation by Jim Langman (then Vice President, Health & Wellness Compliance), which outlined *nine* "controlled substance operational controls" enhancements Walmart had adopted that year.  SAC, Ex. M.  Similarly, Plaintiffs concede that "in April 2015," "Walmart again amended its POM" to list "red flags" for pharmacists when dispensing controlled substances.  SAC ¶ 96.  Then Walmart modified its SOM program in August 2015 to "implement pharmacy-specific and drug-specific thresholds" for dispensing certain controlled substances.  *Id.* ¶ 156.  As the SAC thus concedes, Walmart enhanced its compliance systems years before the Class Period.

### (2)   Walmart's Disclosure Complied with ASC 450

Plaintiffs assert that, beginning with the June 2018 Form 10-Q and in every later Class-Period quarterly filing, Walmart violated ASC 450 because it did not

"specifically disclose" the Investigation and "concealed" the Investigation's "nature and scope."  SAC ¶ 300.  This, too, fails at every level.

To begin, Plaintiffs concede that in the June 2018 10-Q, Walmart disclosed it was "responding to subpoenas, information requests and investigations from governmental entities related to nationwide controlled substance dispensing practices involving the sale of opioids."  *Id.* ¶ 299.  But Plaintiffs gloss over the next sentence, which said Walmart "can provide no assurance as to the scope and outcome of these matters and no assurance as to whether its business, financial position, results of operations or cash flows will not be materially adversely affected."  *Id.*   Because "no investor could read these disclosures without understanding that indeterminate potential losses . . . could later materialize, the defendants had no duty to say more."  *Bank of Am.*, 980 F. Supp. 2d at 580.

Even still, Plaintiffs quibble that Walmart never disclosed more details about the Investigation, including that an EDTX AUSA said she planned to indict the Company, that DOJ later declined to indict and instead formed a civil Working Group, and that the Working Group served a subpoena with many document requests.  SAC ¶¶ 300-309.  ASC 450 required none of these disclosures.  On the contrary, Walmart explained it was responding to subpoenas and investigations and could not make any assurance about their *scope* or *outcome*.  This "simple (and accurate) factual assertion" cannot "constitute any material misrepresentation or

omission." *Oran v. Stafford*, 226 F.3d 275, 285 (3d Cir. 2000). Plaintiffs may have wanted an Investigation "play-by-play"—but companies "are not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *Lions Gate*, 165 F. Supp. 3d at 11; *see also Bank of Am.*, 980 F. Supp. 2d at 575-76 (no obligation "to disclose the imminence and amount of AIG's suit" even if plaintiffs "would very much like to know that fact").

### b. Plaintiffs' Disagreement with Walmart's Accounting Judgment Is Not Actionable

Plaintiffs' claim thus "amounts to mere disagreement with [Walmart's] accounting judgment," which "[c]ourts have routinely rejected" as a basis for securities fraud. *In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *7 (E.D.N.Y. Aug. 6, 2019). That is because GAAP is "far from" a "canonical set of rules," and "tolerate[s] a range of 'reasonable' treatments, leaving the choice" to management. *JPMorgan Chase & Co. v. Comm'r of Internal Revenue*, 458 F.3d 564, 569 (7th Cir. 2006) (citation omitted). Indeed, ASC 450 does not set forth "the kind of fixed rules that would qualify as objective standards." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, 2017 WL 1536223, at *11 (D.N.J. Apr. 27, 2017), *aff'd*, 905 F.3d 106 (3d Cir. 2018).

On the contrary, because the ASC 450 assessment is "inherently subjective," whether to disclose a loss contingency is a matter of opinion. *Id.* An opinion "may be actionable (1) as an untrue statement of material fact if the opinion is both

incorrect (*i.e.*, objectively false) and not genuinely believed (*i.e.*, subjectively false), or (2) misleading if the speaker omits material facts underlying the basis for the opinion 'if those facts conflict with what a reasonable investor would take from the statement itself.'" *Id.* at *12 (quoting *Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)).

Plaintiffs do not allege either. They do not plead that Defendants knew their disclosures "were not GAAP compliant" when issued. *Hertz*, 2017 WL 1536223, at *12. Nor do Plaintiffs allege particularized facts showing Defendants knew facts suggesting ASC 450 required more than Walmart disclosed. *Id.* at *11. This, too, is fatal to Plaintiffs' claims. *See In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 470 (3d Cir. 2004) (dismissing where "complaint makes no specific allegations" defendants knew "accounting policies violated GAAP"); *In re Chemours Co. Sec. Litig.*, 587 F. Supp. 3d 143, 167 (D. Del. 2022) ("Plaintiff points to no alleged facts that plausibly imply that Defendants did not honestly believe that this accrual (which is an opinion) was adequate or that it lacked a reasonable basis.").

## 2. Walmart Did Not Violate Item 103

Plaintiffs' Item 103 claim fails for similar reasons. Plaintiffs assert that all of "Walmart's Class Period SEC filings" violated Item 103 because they did not disclose: (i) EDTX "was contemplating indicting the Company"; (ii) the "contemplated indictment stemmed from the Criminal Investigation" that "began on

16

December 7, 2016"; (iii) the claims were "based on Defendants' decade long violations of the CSA"; (iv) Walmart learned of DOJ's "parallel Civil Investigation" "in November 2017"; and (v) "DOJ was seeking criminal relief and a billion dollars to resolve the matter civilly." SAC ¶ 320. Item 103 required none of this.

To start, Plaintiffs' allegations again rest on the incorrect premise that Walmart had to confess to unproven CSA "violations." It did not. *See In re Galena Biopharma, Inc. Sec. Litig.*, 2019 WL 5957859, at *10 (D.N.J. Nov. 12, 2019); *see also supra* at Section III.A.1.b.(1).

Item 103 also did not require Walmart to disclose the Investigation. A "government investigation, without more, does not trigger a generalized duty to disclose." *Lions Gate*, 165 F. Supp. 3d at 12. Item 103 only requires companies to "[d]escribe briefly any material pending legal proceedings" to which the company is a party, and "any such proceedings *known* to be contemplated by governmental authorities." 17 C.F.R. § 229.103(a) (emphasis added). An "investigation alone is not a 'pending legal proceeding' or a 'proceeding[] known to be contemplated by governmental authorities' under Item 103." *Lions Gate*, 165 F. Supp. 3d at 18; *see also MetLife*, 928 F. Supp. 2d at 718 (no duty to disclose state-attorneys-general investigations under Item 103); *United States v. Crop Growers Corp.*, 954 F. Supp. 335, 347 (D.D.C. 1997) (Item 103 "does not require" disclosure of "uncharged criminal conduct").

Indeed, Item 103 instructs issuers to "[i]nclude the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, [and] a description of the factual basis" of the suit.  17 C.F.R. § 229.103. Had Walmart disclosed—as Plaintiffs insist (SAC ¶ 320)—that the *EDTX* was "contemplating" an indictment based on an investigation that started in December 2016 about prescriptions written by one doctor, *that* disclosure would have been misleading—and Plaintiffs "would undoubtedly have taken issue with" it.[3]  *Salim v. Mobile Telesystems PJSC*, 2021 WL 796088, at *8 (E.D.N.Y. Mar. 1, 2021).  In fact, such a disclosure "would have been reckless" because when the EDTX AUSA said she planned to include Walmart in an indictment of a Texas physician, the "DOJ process was not complete."  Tr. 69:3-73:10.  She did not have unilateral authority to indict Walmart.  The EDTX knew this and therefore "agreed not to proceed with an indictment" to "allow time for Walmart to pursue an appeal" to others within DOJ. SAC, Ex. L at 4-5; *see also* Tr. 72:6-12; 73:9 (Walmart "knew full well" the "AUSA did not have the authority by herself to indict" and the case would "make its way to the US Attorney, and in all probability" go "to the Attorney General").  Sure enough, by August 31, 2018, after more senior officials considered the matter, "DOJ

---

[3] The same is true for the civil part of the Investigation, which involved a "Working Group" of fifteen U.S. Attorneys' Offices and ultimately led to a lawsuit in *this Court* by main Justice, not EDTX.  SAC ¶ 305, Ex. B.

informed Walmart that it was then declining to criminally prosecute." SAC ¶ 232.

In any event, after Walmart met with EDTX prosecutors in April 2018, it disclosed the Investigation (and other investigations) in its next Form 10-Q, explained they pertained to Walmart's "nationwide controlled substance dispensing practices involving the sale of opioids," and warned it could "provide no assurance as to the scope and outcome of these matters, and no assurance as to whether its business, financial condition, or results of operations will not be materially adversely affected." *Id.* ¶ 299. By disclosing the "government investigations" and their "potential legal ramifications," Walmart complied with any potential Item 103 obligations. *Galena*, 2019 WL 5957859, at *10-11; *Cheng v. Activision Blizzard, Inc.*, 2022 WL 2101919, at *9 (C.D. Cal. Apr. 18, 2022) (disclosure that company was party to investigations about "labor and employment matters" sufficient).

### 3.    Walmart Did Not Violate Item 105

In the SAC, Plaintiffs withdraw their Item 303 challenge ("discussion and analysis of financial condition and results of operations") and thereby concede their Item 105 ("risk factors") argument fails. SAC ¶¶ 328, 331. That is because events "that are not reasonably likely to be material under Item 303 are not among the most significant factors rendering an offering speculative or risky under Item 105." *Gutman v. Lizhi Inc.*, 2022 WL 4646471, at *5 (E.D.N.Y. Oct. 1, 2022); *see also Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 484 n.4 (2d Cir. 2011) (same).

Aside from this threshold deficiency, Plaintiffs' Item 105 claim fails for three other reasons.  First, "Item 105 does not provide an independent cause of action." *In re 2U, Inc. Sec. Class Action*, 2021 WL 3418841, at *31 (D. Md. Aug. 5, 2021) (citing *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 705 (3d Cir. 2020)).

Second, Item 105 does not require disclosure of legal proceedings or regulatory-enforcement actions.  17 C.F.R. § 229.105(a).  Those are covered by Item 103.  *See In re SeaChange Int'l, Inc.*, 2004 WL 240317, at *10 (D. Mass. Feb. 6, 2004) ("Item 103 marks the extent of a registrant's obligation to disclose information pertaining to pending litigation."); *supra* at Section III.A.2.

Third, the SAC shows Walmart complied with Item 105.  Plaintiffs point to two disclosures:  one in Walmart's March 31, 2017 Form 10-K, and another in the 2018-2020 Form 10-Ks.  SAC ¶¶ 326, 329.  In the 2017 10-K, Walmart disclosed that its "retail pharmacy operations are subject to numerous risks," including "changes in the regulatory environment," and "changes in laws, rules, and regulations that affect our retail pharmacy business," which could "adversely affect our overall net sales, other results of operations, cash flows and liquidity." *Id*. ¶ 326; Ex. 1.  Plaintiffs contend that Walmart "concealed the much larger risk[] that DOJ would criminally and/or civilly prosecute" the Company for "failing to comply with the CSA."  SAC ¶ 328.  Again, Walmart had no duty to disclose unadjudicated wrongdoing.  Indeed, the "general rule that a company does not have such a duty

20

'would be entirely meaningless if every reporting company were required to disclose uncharged, unadjudicated conduct in the risk-factors section[.]'" *Jun v. 500.com Ltd.*, 2021 WL 4813192, at *20 (E.D.N.Y. Aug. 13, 2021).

Then in the 2018 10-K, Walmart updated the "Risk Factors" to warn that its "pharmacy operations in the United States are subject to numerous federal, state and local regulations" related to the "dispensing and sale of controlled substances"—and that "noncompliance with applicable laws and regulations could result in the imposition of civil and criminal penalties that could adversely affect" its business. SAC ¶ 329. Plaintiffs contend this disclosure misleadingly represented "as hypothetical" risks that "had already transpired"—namely, that "because of the Company's decade long failure to comply [with] the CSA," it "was subject to" the Investigation. *Id.* ¶ 331. But Plaintiffs misconstrue Walmart's disclosure. The "risk actually warned of" (*Williams v. Globus Med., Inc*., 869 F.3d 235, 242 (3d Cir. 2017)) was that Walmart could face "civil and criminal penalties that could adversely affect the continued operation of our businesses" (SAC ¶ 329). As Plaintiffs concede, Walmart paid no penalties in the Class Period. *Id.* ¶¶ 232, 250. Thus, Plaintiffs' "materialization" theory fails. *See Williams*, 869 F.3d at 242-43 (risk that sales could be adversely affected if distributors stopped doing business with company had not materialized where plaintiffs failed to allege that the company's "sales were adversely affected" when "disclosures were made"); *SLF*

*Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 64 (D. Del. 2020), *aff'd*, 2022 WL 3442353 (3d Cir. Aug. 17, 2022) (no duty to disclose "unmaterialized risks" of "future adverse legal rulings").

### 4.    The Press Release Is Not False or Actionable

Plaintiffs' challenge to an October 26, 2017 press release—where Walmart said it stood "ready to work with our nation's leaders on a solution to combat prescription drug addiction and misuse" and had "taken steps to address" prescription-medication abuse (SAC ¶ 321)—fails for two reasons.

First, Plaintiffs allege no facts showing the statements were false.  Plaintiffs fail to allege, for example, that Walmart was not ready to combat prescription-medication misuse—on the contrary, Plaintiffs say that McMillon was "serious" about "combatting the opioid crisis" and sought to do so.  *Id*. ¶ 57.  Plaintiffs also challenge the comment that Walmart had "taken steps" to address the opioid crisis by implementing "comprehensive policies and training to help support its pharmacists."  *Id*. ¶ 321.  Again, the SAC shows that Walmart took such steps.  For example, Walmart regularly updated its POM, which trained pharmacists on how "to ensure that a prescription ha[d] been issued for a valid purpose," "determin[e] when a proper patient prescriber relationship might not exist," identify "red flags of illegality," and handle prescriptions raising "red flags." *Id*. ¶¶ 95-96.

Second, the press-release statements "are not material, but instead constitute inactionable puffery." *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 487 (D. Del. 2019).  Indeed, courts have dismissed claims challenging similar statements.  *See id.* ("robust compliance driven culture" and "demonstrated compliance infrastructure" were puffery); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) (commitment to "serving safe, high quality food" was puffery); *Lomingkit v. Apollo Educ. Grp. Inc.*, 2017 WL 633148, at *14 (D. Ariz. Feb. 16, 2017) ("taking steps" to achieve goals was puffery).

### 5.    The SOX Certifications Are Not Actionable

Finally, Plaintiffs challenge McMillon's and Biggs's SOX Certifications. *See* SAC ¶ 335.  Each certification included the "important qualification" that the statements were true based on Defendants' "knowledge"—and are thus opinions. *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, 2019 WL 4257110, at *24-25 (S.D.N.Y. Sept. 9, 2019); *see also Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *48 (M.D. Pa. Aug. 18, 2022) (SOX certifications "are statements of opinion").  As a result, to establish falsity, Plaintiffs "must do more than simply allege that the conclusions were wrong." *AmTrust*, 2019 WL 4257110, at *25. Instead, they must identify specific facts suggesting that at the time of certification, McMillon and Biggs had reached a different conclusion than the one stated—or reached no conclusion at all.  *See id.*  Plaintiffs fail to do so—in fact, the SAC

23

includes no particularized facts about either executive's state of mind, much less facts showing either knowingly signed false certifications. *See infra*, Section III.B.1.

### B.  <u>Plaintiffs Do Not Allege a Strong Inference of Scienter</u>

The SAC must also be dismissed because Plaintiffs fail to plead particularized facts giving rise to a strong inference of scienter.  *See* 15 U.S.C. § 78u-4(b)(2).  The PSLRA's scienter requirement "marks a sharp break with Rule 9(b)."  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).  To survive a motion to dismiss, Plaintiffs must allege "strong circumstantial evidence" that Defendants knew or recklessly disregarded the false or misleading nature of the statement at issue.  *Id.* at 276.  A "reckless" statement involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care" that "presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."  *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004).

Plaintiffs also "may not make general allegations of scienter against a collective group of defendants; they must specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."  *Horizon*, 686 F. Supp. 2d at 420-21.  Plaintiffs' SAC must be dismissed because it "alleges absolutely no corroborative facts—let alone 'strong circumstantial evidence'"—supporting a strong inference of scienter as to any Defendant.  *In re*

*Elecs. For Imaging, Inc. Sec. Litig.*, 2019 WL 397981, at *8 (D.N.J. Jan. 31, 2019).

### 1.   Plaintiffs Do Not Establish a Strong Inference of Scienter as to the Individual Defendants

Like the CAC, the SAC "fails to cite a single document or witness" corroborating Plaintiffs' assertion that Defendants possessed scienter. *Sapir v. Averback*, 2016 WL 554581, at *10 (D.N.J. Feb. 10, 2016). In fact, although the SAC added thirteen pages, it does not add *any* particularized facts showing that McMillon or Biggs acted with scienter. On the contrary, the few "new" allegations confirm that Plaintiffs are grasping at straws, not that either Defendant engaged in wrongdoing. *See, e.g.*, *Tellabs*, 551 U.S. at 326 ("omissions and ambiguities count against inferring scienter").

**The Investigation, 2011 MOA, and PSW.** Plaintiffs first assert that (1) Defendants knew about the Investigation; (2) "it is inconceivable" that Defendants did not know about the 2011 MOA; and (3) Defendants "received" the PSW—all of which purportedly show that Defendants knew their Class-Period statements were false or misleading. SAC ¶¶ 343, 346, 349. None of these allegations supports a strong inference of scienter.

It is no revelation that McMillon or Biggs knew about the Investigation—Walmart *disclosed* it in June 2018 and in every later quarterly filing. *See Laasko v. Endo Int'l, PLC*, 2022 WL 3444038, at *9 (D.N.J. Aug. 17, 2022) (that "opioid-related litigation was discussed within the Company does not provide a strong

25

inference of scienter"). Even so, Plaintiffs assert that "any minimal level of due diligence would have uncovered Walmart's CSA violations and therefore the fact that the Investigation posed a material liability to Walmart." SAC ¶ 350. Sweeping assertions like these fall far short of the "strong circumstantial evidence" needed to show scienter. *See In re Campbell Soup Co. Sec. Litig.*, 2022 WL 6961796, at *7 (D.N.J. Oct. 11, 2022) (rejecting "conclusory statement that the [challenged issues] were 'watched by everyone'"). Indeed, Plaintiffs "cannot state a claim" by alleging that "any reasonable inquiry would have uncovered a material fact whose omission renders" a statement misleading. *Orrstown*, 2022 WL 3572474, at *49.

As to the **MOA**, Plaintiffs allege no facts suggesting McMillon or Biggs knew about it, but even if they did, the MOA expired *two years before* the Class Period. Plaintiffs' own allegations (and exhibits) show that Walmart adopted many policies and controls-enhancements *after* the MOA—refuting any suggestion that knowledge of the MOA meant knowledge of CSA violations.

The same is true for the **PSW**. It was drafted *three years before* the Class Period, and again, Plaintiffs' own allegations show that Walmart enhanced its controlled-substance controls in the months and years *after* the PSW. Furthermore, the only tie to Defendants is a stray line noting the SOM project was "Board informed." SAC, Ex. J. This is irrelevant for Biggs, since he is not a Board member. And even for McMillon, Plaintiffs allege nothing suggesting *what* McMillon

learned, *when* he learned it, or most importantly, *whether* that knowledge made him understand his statements were false three years later.  *See In re NAHC, Inc. Sec. Litig.*, 2001 WL 1241007, at *19 (E.D. Pa. Oct. 17, 2001), *aff'd*, 306 F.3d 1314 (3d Cir. 2002) (plaintiffs must identify "reports or statements" that "provided a basis for advance knowledge of the falsity of their statements").

**Committee Membership.**  Plaintiffs next assert that because McMillon and Biggs served on an Ethics, Compliance, and Risk Committee, they "would have received" documents "detailing Walmart's CSA violations."  SAC ¶¶ 346, 349.  But "generalized claims" that Defendants were "privy to confidential proprietary information concerning the Company are not sufficient to give rise to a strong inference that [they] acted with the required state of mind."  *Israeli v. Team Telecom Int'l, Ltd.*, 2006 WL 2883237, at *5 (D.N.J. Oct. 10, 2006); *see also Endo*, 2022 WL 3444038, at *9 ("mere occurrence of meetings" where "opioid-related litigation was discussed" did not support scienter).  Plaintiffs must identify "specific information conveyed to management and related to fraud."  *Rahman*, 736 F.3d at 246-47.  The SAC contains none of this.

**SOX Certifications.**  Plaintiffs also note that McMillon and Biggs signed SOX certifications.  SAC ¶¶ 348, 350.  But this "does not add to the scienter puzzle in the absence of any allegation that the defendant knew he was signing a false SEC filing or recklessly disregarded inaccuracies contained in an SEC filing."  *Hertz*, 905

27

F.3d at 118.  Again, the SAC contains no such allegations.

**McMillon's Alleged Comment to a Friend, Input on DOJ Presentation, and Knowledge of Refusal-to-Fill Project.**  Relying on an MDL order issued *after* the Class Period, Plaintiffs note that in 2016, McMillon "bumped into a friend" who lost his son to opioid misuse.  SAC ¶ 344.  McMillon allegedly told his friend that Walmart would "'throw[] technology' at the opioid crisis," and then emailed his friend's "suggestions" to others.  *Id.* ¶¶ 204-205.  But Plaintiffs do not explain how forwarding a friend's suggestions made McMillon aware of "information contradicting" his public statements.  *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 553 (D.N.J. 2010); *see also Rahman*, 736 F.3d at 247 (plaintiffs must plead "specific" information "related to fraud").  If anything, it supports the opposite inference:  that McMillon sought to prevent opioid abuse, not ignore it, particularly considering Plaintiffs allege no facts suggesting Walmart did not "put any money into fighting the opioid crisis."  Tr. 66:23-67:1.

Plaintiffs also assert that McMillon allegedly "provided input into and was required to approve" Walmart's July 26, 2018 DOJ presentation.  *See* SAC ¶¶ 262, 345.  This, too, does not support a strong inference of scienter.  Plaintiffs say nothing about *what* that presentation included, let alone *how* it shows that McMillon made any statement with scienter.  *See In re Anadigics, Inc. Sec. Litig.*, 2011 WL 4594845,

at \*34 (D.N.J. Sept. 30, 2011) (no scienter where plaintiffs' allegations "say[] nothing about what [defendant] might have learned" during warehouse tour).  That Walmart continually told DOJ it *complied with* controlled-substance laws undermines any suggestion that the referenced presentation admitted *the opposite*.

Finally, Plaintiffs assert that McMillon "would have been made aware of" a 2018 plan to make "refusal-to-fill" prescription forms more "readily accessible" to pharmacists because, according to a document produced in the MDL, the project was a "priority of Rachel Brand," who "reported" to McMillon.  SAC ¶¶ 108, 347. Again, this document weakens Plaintiffs' scienter argument because it shows efforts to *enhance* opioid-prescription controls, not *flout* them.  SAC, Ex. G.  Besides, "[m]ere allegations" that McMillon "should have known" of alleged fraud because "his subordinates were aware of it" are insufficient to show scienter.  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 399 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011); *see also Winer Family Tr. v. Queen*, 503 F.3d 319, 332 (3d Cir. 2007) (affirming dismissal where plaintiff did not allege employee "conveyed his opinions" to defendant or that defendant "adopted" those opinions).

**MDL.**  The Court denied as irrelevant Plaintiffs' request to judicially notice an MDL verdict and abatement order.  *See* Tr. 65:24-66:4; 83:1-5.  Ignoring the Court's guidance, Plaintiffs now *attach* those two documents and claim they show

Defendants "must have been aware" of CSA violations.  SAC ¶¶ 351-354.  But both the trial and abatement order occurred *after* the Class Period and thus do not show what McMillon or Biggs knew when they made the Challenged Statements.  In fact, Plaintiffs do not allege that the trial even involved the Individual Defendants, let alone suggested they possessed scienter.   Without a concrete connection to McMillon and Biggs, the court "need not credit Plaintiffs' conclusory statement." *Campbell Soup*, 2022 WL 6961796, at *7.

**Other Scattershot Assertions.**  Plaintiffs offer other scattershot scienter assertions—including (1) statements made in a state lawsuit, (2) Rachel Brand's hiring, (3) Walmart's membership in the National Association of Chain Drug Stores, and (4) purported "interference" with the EDTX investigation.  *See* SAC ¶¶ 355-359, 364-367.  All suffer from at least one common flaw:  they are unconnected to the Individual Defendants and do not suggest that those Defendants knew (or recklessly disregarded) that the Challenged Statements were false when made.  *See Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing allegations that lacked "corroborating factual support explaining how and why the Defendants knew the statements to be false").

**Motive to Drive Sales.**  Plaintiffs also argue that Defendants had a "motive to drive sales by attracting customers to Walmart who filled" opioid prescriptions. SAC ¶ 363.  But "[c]orporate officers always have an incentive to improve the lot of

30

their companies"—"this is not, absent unusual circumstances, a motive to commit fraud." *SLF*, 499 F. Supp. 3d at 68 (citing *Avaya*, 564 F.3d at 279). To support scienter, Plaintiffs "must assert a concrete and personal benefit to the individual defendants resulting from this fraud." *Id*. Plaintiffs do not allege any "concrete and personal benefit" to any Individual Defendant. On the contrary, that Plaintiffs do not allege that Defendants sold Walmart shares during the Class Period *cuts against* an inference of scienter. *See NAHC*, 2001 WL 1241007, at \*18 (that "several of the named individual defendants had not sold their company stock during the relevant time frame" undermined an inference of scienter).

### 2. Plaintiffs Do Not Establish a Strong Inference of Scienter as to Walmart

Plaintiffs also fail to allege a strong inference of Walmart's scienter. To determine whether a corporation has scienter, the Court must look "to the state of mind of the individual corporate official or officials who make or issue the statement"—*i.e.*, McMillon and Biggs. *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 442 F. App'x 672, 676 (3d Cir. 2011). Because Plaintiffs have not pled "the requisite level of scienter with respect to at least one of the Individual Defendants," their allegations against Walmart also fail. *Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at \*3 (C.D. Cal. Nov. 1, 2012); *Horizon*, 442 Fed. App'x at 676 (affirming dismissal of claims against corporation where no individual made statements with scienter).

31

C.     **Plaintiffs Do Not Allege Loss Causation**

Plaintiffs claim two disclosures revealed the relevant "truth" about the alleged misstatements:  the *ProPublica* Article and the DOJ Complaint.  SAC ¶¶ 368-374.  Neither is "corrective" for loss-causation purposes.

Plaintiffs first assert that *ProPublica* disclosed "for the first time" (1) the existence and alleged violations of the MOA; (2) fifty DEA "Letters of Admonition" Walmart received between 2000 and 2018; (3) DOJ "intended to criminally indict" Walmart; and (4) EDTX DOJ "had been conducting a civil investigation."  SAC ¶ 370.  None of these "facts" revealed a "pertinent truth that was previously concealed or obscured."  *SLF*, 499 F. Supp. 3d at 70.  The 2011 MOA expired *two years before* the first alleged misstatement.  Likewise, Plaintiffs never explain *what* "Letters of Admonition" are, *if* those letters led to any fines or penalties, *whether* the Letters even relate to the Challenged Statements, or, most importantly, *how* the Letters revealed any "alleged false representations."  *See Chemours*, 587 F. Supp. 3d at 169.  As for the article's Investigation discussion, it did not expose a previously concealed "pertinent truth" but presented one-sided and outdated details about a possible criminal proceeding that never happened and an investigation that Walmart disclosed two years earlier.  SAC ¶ 299.  The article's "negative journalistic characterization" is not "corrective" for loss-causation purposes.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010); *In re Merck & Co. Sec.*

*Litig.*, 432 F.3d 261, 270 (3d Cir. 2005) (spin on already-public information not corrective).  Even DOJ called the article "misleading," with "numerous inaccuracies and erroneous conclusions."  Ex. 11.

The DOJ Complaint is also not corrective for two reasons.  First, it did not reveal new news.  Walmart stated *two months earlier* that DOJ planned to sue.  SAC ¶¶ 247-248; Ex. 6; *Uniti*, 499 F. Supp. 3d at 70.  Second, the DOJ Complaint did not expose CSA *violations* (SAC ¶ 372) but asserted unproven *allegations* that Walmart contests—and thus cannot be corrective.  *See Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017) (state-AG complaint alleging "unproven misconduct" not corrective).

## IV.   CONCLUSION

Defendants respectfully request that the Court dismiss the SAC with prejudice.

Dated: November 16, 2022

Of Counsel:


Sean M. Berkowitz
Nicholas J. Siciliano
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611.
Tel.:  +1.312.876.7700
Fax:  +1.312.993.9767
Email: sean.berkowitz@lw.com
Email: nicholas.siciliano@lw.com

*Counsel for Defendants*

Respectfully submitted,

RICHARDS, LAYTON &
FINGER, P.A.

*s/ Raymond J. DiCamillo*
Robert W. Whetzel (#2288)
Raymond J. DiCamillo (#3188)
920 North King Street
Wilmington, Delaware 19801
Tel.:  +1.302.651.7700
Fax:  +1.302.651.7701
Email: whetzel@rlf.com
Email: dicamillo@rlf.com

*Counsel for Defendants*

## CERTIFICATION OF COMPLIANCE

The foregoing document complies with the type-volume limitation of this Court's October 27, 2022 Order Governing Defendants' Motion to Dismiss Lead Plaintiff's Second Amended Complaint.  The text of this brief, including footnotes, was prepared in Times New Roman, 14 point.  According to the word processing system used to prepare it, the brief contains 7,879 words, excluding the case caption and cover page, table of contents, table of authorities, glossary of defined terms, exhibits, and any request that the Court consider such exhibits.

Dated: November 16, 2022          *s/ Raymond J. DiCamillo*
                                  Raymond J. DiCamillo (#3188)